# United States Court of Appeals
## For the First Circuit

No. 07-1661

DENNIS ARROYO-AUDIFRED; WALESKA RIVERA MONTAÑEZ;
DESIREE ARROYO-RIVERA; DENNIS ARROYO-RIVERA,

Plaintiffs, Appellants,

v.

VERIZON WIRELESS, INC.; JOSÉ RUBÉN SÁEZ, in his personal and
official capacity; John Doe, in his personal and official
capacity; INSURANCE COMPANY ABC,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., U.S. Senior District Judge]

Before

Lipez, Circuit Judge,

Baldock,[*] Senior Circuit Judge,

and Howard, Circuit Judge.

Lydia Ramos, with whom Carlo Law Offices, P.S.C., was on
brief, for appellant.
Miriam B. Toledo-David, with whom Lizette Vélez-Rivé, Bayoán
Muñiz-Calderón and Vélez-Rivé & Toledo-David, P.S.C., were on
brief, for appellees.

June 4, 2008

[*]Of the Tenth Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  In this age discrimination case, Appellant Dennis Arroyo-Audifred ("Arroyo") appeals the district court's grant of summary judgment to his employer, Verizon Wireless, Inc., on his claim that he was victimized by a policy of discrimination and was wrongfully denied several promotions.[1]  We affirm.

We review the district court's summary judgment decision de novo,  Rathbun v. Autozone, Inc., 361 F.3d 62, 66 (1st Cir. 2004), taking the record facts in the light most favorable to the nonmoving party, and drawing all reasonable inferences in his favor.  Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). We will affirm the district court if we find that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  We are not, however, required to "accept as true or to deem as a disputed material fact, each and every unsupported, subjective, conclusory or imaginative statement" made by a party.  Torrech-Hernandez v. General Elec. Co., 519 F.3d 41, 47 (1st Cir. 2008).

---

[1]Arroyo also named a Verizon superior, Jose Saez, as a defendant.  For purposes of this motion, we treat Saez and Verizon similarly. Additionally, Arroyo, his wife and children asserted claims under Puerto Rico law.  These claims were dismissed without prejudice contemporaneously with the summary judgment ruling, and are not part of this appeal.

## I. BACKGROUND

Arroyo was born in 1956. In 1981, he began working as a sales representative for the Puerto Rico Telephone Company ("PRTC"). He was promoted to a supervisory position seven years later. In 1995, he began working for PRTC's wireless telephone division as a store supervisor. In 2001, he successfully applied to become a sales manager in the retail sales department. Also in 2001, Verizon became the parent company of PRTC and implemented a reorganization that eliminated some positions and created others. One of the eliminated positions was retail sales manager, which Arroyo and four other Verizon employees held. The reorganization led to the creation of two district manager positions. Arroyo applied to become a district manager in late 2002, when he was 46 years old. Although Verizon's human resources department certified that he met the minimum requirements for the job, he was not selected. Instead, the job went to one of Arroyo's fellow displaced retail sales managers, Gustavo Cañas, who was then 35 years old. The other unsuccessful candidates were 36, 43 and 58 years old.

At roughly the same time, given that the reorganization had eliminated Arroyo's old position, Verizon offered Arroyo a newly created position of retail store manager, at the same salary as his former job of retail sales manager. Although he considered it a demotion, he accepted the position, as did two other former

retail sales managers, whose ages were 36 and 50.  He was allowed to choose the store where he would work, and selected the store in Humacao, which was near his home.

In March 2003, Arroyo applied for the position of associate director of corporate sales.  Verizon's human resources department certified Arroyo and three other candidates as meeting the minimum requirements for the position.  Three of the four were older than 40 years of age.  Rather than hiring any of the internal candidates, Verizon turned to a headhunter, to look for external candidates within the wireless industry.  William Cuebas was selected from a group of 20 candidates.  He was 39 years old.

Near the end of 2003, the "other" district manager position created in the 2002 reorganization became available due to a retirement.  Arroyo applied for the job, as did three other Verizon employees over the age of 40.  Only Arroyo had the minimum educational requirements for the job.  The opening was re-posted internally, and two additional candidates were certified by the human resources department as meeting the minimum job requirements -- Madeline Cuesta and Vivianette Menendez.  Both were, like Arroyo, retail store managers.  Menendez was 37 years old; Cuesta was 35.  General Sales Manager Jose Saez conducted the interviews. During Arroyo's interview, Saez said, "This position is like stepping in a train station, sometimes the doors open and sometimes they don't."  Arroyo interpreted the comment to mean that the

position could already be closed to him. For his part, Saez explained that he used the analogy with all interviewees currently employed by Verizon because he wanted them to remain focused on their jobs while waiting for an open position. In addition, Arroyo testified that Saez yawned during his interview, which Arroyo took to mean that Saez found his answers boring or he didn't care for them. Saez testified that Cuesta and Menendez were his first two choices for the job. He noted in a written summary his opinion that although Arroyo was a "good candidate," he "lacked professional maturity," meaning that Arroyo did not express himself with the necessary confidence for the job in question. After the interviews, Saez's supervisor, Walter Forwood, asked Saez for his top two choices, as he had a long-standing job opening and wanted to interview them. Forwood hired Menendez as distribution channels director. Saez then chose Cuesta for the district manager position.

Cuesta was promoted in May 2006, and Arroyo applied for her former district manager job. The interview process consisted of an English test, a sales aptitude test, and a "structured interview," wherein all candidates would be asked the same questions by interviewers. The process is designed to be objective, as there are specific subjects to be covered and responses deemed acceptable. Arroyo did not pass the structured interview. Sometime after the interview, Arroyo spoke with one of

the interviewers, Human Resources Manager Vivian Sanabria.  She told Arroyo that he needed to improve his organizational and planning skills.  Cuesta, participating in the interview for her old job, testified that Arroyo's answers were superficial, incomplete and indirect.  Frances Rodriguez, whose interview score was higher than Arroyo's was chosen to be the new district manager.  Rodriguez was 52 years old at the time.

## LEGAL ANALYSIS

The Age Discrimination in Employment Act, ("ADEA") prohibits employers from taking adverse employment actions against an employee older than 40 because of his age.  Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007).  Where, as here, there is no "smoking gun" evidence of discrimination, a plaintiff can use the familiar McDonnell Douglas burden shifting framework to meet his ultimate burden of proving that he was denied promotions due to his age.  Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 478 (1st Cir. 1993) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973)).  Arroyo bears the initial burden of making out a prima facie case of age discrimination.  To do so, he must show: 1) he was at least 40 years old at the time of the discrimination; 2) he was qualified for the position; 3) he was denied the promotion; and 4) Verizon filled the position with a younger person of similar qualifications.  Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991), cert. denied, 504 U.S. 985 (1992).  This

"modest showing" is sufficient to raise an inference of discrimination. Rathbun, 361 F.3d at 71. The burden then shifts to Verizon to articulate a legitimate, non-discriminatory reason for its decisions. Currier v. United Techs. Corp., 393 F.3d 246, 254 (1st Cir. 2004). If Verizon does so, Arroyo must produce evidence that Verizon's proffered reasons are a pretext for age discrimination. Hoffman v. Applicators Sales and Service, Inc., 439 F.3d 9, 17 (1st Cir. 2006). "[T]he ultimate burden on the plaintiff is to show that discrimination is the or a motivating factor, a showing which may, but need not be, inferred, depending on the facts, from the showing of pretext." Id. (citing Fite v. Digital Equip. Corp., 232 F.3d 3, 7 (1st Cir. 2000)).

Before we undertake the analysis of the summary judgment record, we address certain subsidiary issues. Arroyo's complaint alleged both that he was improperly denied specific promotions and that he was victimized by Verizon's policy of discrimination that "closed the doors" of promotion to older workers. The district court found that the statute of limitations barred consideration of the promotion denials in 2002 and March 2003 as specific claims of discrimination. The court did, however, allow consideration of the claim of a discriminatory policy if it continued after July 28, 2003. Arroyo-Audifred v. Verizon Wireless, 431 F. Supp. 2d 215,

220 (D.P.R. 2006).[2]  Arroyo has not appealed this ruling, and we therefore do not revisit it.

Next, we note that while Arroyo complied with Fed. R. Civ. P. 56 and Local Rule 56(c) by submitting an opposing statement of material facts in support of his objection to Verizon's summary judgment motion, his denials of many of Verizon's asserted facts consisted of the following statement:  "Denied, as it is a matter of veracity for the jury to assess, together with all the circumstances in the case."  The district court deemed such denials as ineffective for the purpose of opposing summary judgment, and we do as well.  It is simply not enough to say, in effect, that the testimony of a Verizon employee might be disbelieved by a jury. Instead, Arroyo must offer specific facts to counter those set out by Verizon.  See, e.g., Vega, 3 F.3d at 479 (nonmovant's facts must demonstrate the existence of definite competent evidence fortifying plaintiff's version of the truth).  This is the case even where motive and intent are at issue.  Santiago v. Cannon, 138 F.3d 1, 5 (1st Cir. 1998).  Arroyo may not meet his burden by citing "an inequity and tacking on the self-serving conclusion that the

_____

[2]The district court relied on Crowley v. L.L. Bean, Inc., 303 F.3d 387, 406 (1st Cir. 2002), which held that a plaintiff can pursue a hostile environment sexual harassment claim in which the hostility began outside the statute of limitations as long as some of the unlawful conduct took place within the limitations period.  We assume without deciding that this analysis, first enunciated by the Supreme Court in Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), applies equally to ADEA claims involving so-called systemic claims.

defendant was motivated by a discriminatory animus." Id. (quoting Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)).

With respect to the specific incidents about which Arroyo timely filed, the district court assumed, without deciding, that Arroyo satisfied his prima facie burden. Although neither side argues this point, we view the evidence as indisputable that, at least with respect to the 2006 district manager position, Arroyo failed to establish a prima facie case because Verizon did not "fill the position with a younger person of similar qualifications." See Mesnick, 950 F.2d at 822. As previously noted, Verizon selected Frances Rodriguez for the job. At 52, she was more than two years older than Arroyo. Thus, we need go no further in analyzing this alleged incident of discrimination. See Hershey v. Donaldson, Lufkin & Jenrette Securities Corp., 317 F.3d 16, 20 (1st Cir. 2003) (we may affirm the district court's grant of summary judgment for any reason supported by the record.).

Arroyo's remaining specific and timely allegation is that he was improperly denied the district manager job in the late 2003 - early 2004 time frame. Here, we have no problem concluding that Arroyo meets his prima facie burden, as it is undisputed that he met the minimum qualifications for the position, and that the job went to Madeline Cuesta, 12 years Arroyo's junior. Just as easily, we also conclude that Verizon has offered a non-discriminatory reason for the hiring decision. Specifically, Saez, having

-9-

concluded that Arroyo "lacked professional maturity," found the other two candidates better suited for the position.

Arroyo asserts several reasons to support his claim that Verizon's stated reasons were simply a pretext for discrimination. First, he cites the fact that Saez yawned while he was interviewing Arroyo. While we agree that such an act could make an interview awkward, we fail to see how an involuntary yawn evinces a hidden discriminatory animus any more than a sneeze or a cough. Arroyo posits the subjective belief that the yawn indicated that his answers didn't matter to Saez, as the discriminatory die had been cast. In Arroyo's view, this is enough to create an issue of fact sufficient to defeat summary judgment. We disagree. It is well-settled that the court is required to draw only <u>reasonable</u> inferences in plaintiff's favor. <u>Torrech</u>, 519 F.3d at 47. Imputing an ulterior motive to a yawn is not such a reasonable inference.

Nor can we find any nefarious intent behind Saez's "train" comment. Arroyo does not dispute Saez's testimony that he made the same or similar comments to every internal job candidate. Instead, he offers his subjective view that the comment was a not-so-subtle way of telling Arroyo that he had no chance for the job. Once again, Arroyo's subjective belief as to the "real meaning" of a somewhat ephemeral comment is not a suitable proxy for admissible evidence.

Next, Arroyo argues that his human resources "certification score," being the highest of all candidates, constitutes evidence of discrimination. We disagree. Verizon's Human Resources Director, Sandrelly Cordova, testified that such scores are only for the human resources department's internal use to ascertain that candidates have the minimum requirements for the job, and thus may be "certified" candidates. She further testified that the human resources department has no further role in the selection process. Arroyo does not counter this evidence with anything other than an assertion that Cordova's credibility is for the jury to determine. This is insufficient to show pretext. Santiago, 138 F.3d at 5. Arroyo must put forth some evidence that Cordova's explanation is false. He has not done so.

Finally, as we have found that summary judgment was appropriate with respect to the specific incidents that were timely filed, we necessarily find that Arroyo cannot, as a matter of law, demonstrate any continuing pattern of discrimination that extended beyond July 28, 2003, as required by the district court's statute of limitations ruling, which Arroyo did not appeal.

Given the record evidence, this lawsuit boils down to Arroyo's claim that he was more qualified for jobs that went to others. However, courts in employment discrimination cases may not act as "super personnel departments," substituting judicial judgments for the business judgments of employers. Bennett, 507

F.3d at 32 (citing <u>Mesnick</u>, 950 F.2d at 825).  Because we agree with the district court that the record lacked evidence that Verizon's decisions with respect to Arroyo were either pretextual or motivated by discriminatory animus or policy, the judgment is **<u>affirmed</u>**.