# United States Court of Appeals
## For the First Circuit

No. 08-1320

JOSÉ VÉLEZ,

Plaintiff, Appellant,

v.

THERMO KING DE PUERTO RICO, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Torruella, Leval,* and Lipez, Circuit Judges.

Carlos M. Vergne-Vargas for appellant.
Edwin J. Seda-Fernández, with whom Mariel Y. Haack was on
brief, for appellee.

October 16, 2009

---

*Of the Second Circuit, sitting by designation

**LIPEZ, Circuit Judge**.  Plaintiff José Vélez appeals from a grant of summary judgment for his former employer, Thermo King de Puerto Rico, on his claims of age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA"), Puerto Rico Act No. 80, P.R. Laws Ann. tit. 29, § 185a ("Law 80"), and Puerto Rico Act No. 100, P.R. Laws. Ann. tit. 29, § 146 ("Law 100").  After careful review of the record, we vacate the entry of summary judgment and remand the case for further proceedings.

## I.

We recite the background facts of this case and the underlying sequence of events that provide the context for this dispute.  Subsequently, we discuss in more detail the facts necessary for our disposition of this appeal.  Because this is an appeal from the entry of summary judgment, we recite the facts in the light most favorable to the non-moving party, the plaintiff Vélez.  Mariani-Colón v. Dep't of Homeland Sec., 511 F.3d 216, 219 (1st Cir. 2007).

Vélez worked for Thermo King from 1978 to 2002, when he was fired at the age of 56.  At the time of his discharge, his position at the company was "Tool Crib Attendant," and he had been in that role for approximately eight years.  As Tool Crib Attendant, he was in charge of maintaining, dispatching, and safeguarding the company's tools and maintenance materials, as well as preparing purchase requisitions for new tools and materials.

-2-

Until shortly before his dismissal, his employment record with Thermo King was unblemished.

In September 2002, Vélez arrived at work to discover that the padlock securing an expensive chipping hammer had been broken and the hammer, which was worth over $1,000, was missing. He immediately reported the incident to management. Instead of reporting the theft to authorities, Thermo King hired private investigators to conduct an internal investigation into the disappearance of the chipping hammer as well as other irregularities with respect to its tools and materials. The internal investigation uncovered allegations that Vélez had stolen company property and sold it for his own profit.

Thermo King introduced into the summary judgment record an affidavit of its Human Resources Director, Steve Soto,[1] and internal records of the investigation and employee interviews. According to Thermo King, employee Alfredo Trinidad reported having paid Vélez $80 for four gallons of gray floor paint that were the

---

[1] Plaintiff claims that the district court abused its discretion in admitting Soto's affidavit into the summary judgment record because Soto had no personal knowledge of the events that were the subject of the investigation and that the affidavit is therefore based on inadmissible hearsay, in violation of Fed. R. Civ. P. 56(e). This objection misses the mark. Soto's affidavit about the results of the investigation was not admitted to show the truth of those results, but because (according to Thermo King) those results explain Thermo King's motivation to fire Vélez. As we will explain, the relevant question in this case is not whether Thermo King was correct that Vélez had violated rules, but whether that perceived violation was the reason it fired him. Thus, there was no abuse of discretion in admitting the affidavit.

property of Thermo King. Trinidad also admitted to facilitating the sale of four additional gallons of the floor paint to another employee, Blanca Figueroa-Díaz ("Figueroa"). He reported paying Vélez another $80 on Figueroa's behalf and arranging for the paint to be delivered to her home. Trinidad further reported purchasing from Vélez a Leatherman knife, which he believed to be the property of Thermo King and for which he paid $20, and said that Vélez had offered to sell him a paint spray gun for another $80 but that he had refused the offer. Trinidad also admitted to stealing an impact gun, soldering rods, an adjustable wrench, and other lightweight tools from Thermo King, and reported that another employee, Raúl Rivera, had also stolen tools. Other employees reported during the investigation that Trinidad had stolen several drills and other tools from Thermo King.

Investigators also spoke with Figueroa, who confirmed that she had bought four cans of paint from the plaintiff through Trinidad and that she had known that the paint was the property of Thermo King. Another employee, Víctor Quiles-Miranda ("Quiles"), told the investigators that Vélez had told him that he had a deal with a Thermo King supplier whereby the supplier would provide Vélez with Leatherman knives to sell in exchange for 50% of the sales revenue. Quiles also admitted to the investigators that he had stolen several tools, including screwdrivers, a roll of two-sided tape, pressure pliers, a crescent wrench, and a pipe wrench,

and that when he was "in charge of the tool warehouse" he had "dispatched tools to several co-workers . . . without them bringing in dispatch orders, aware that they were asking for them for their own personal use and not for Thermo King."

Vélez was interviewed last. He was asked whether he had ever taken and sold company property, specifically paint and Leatherman brand knives, for his own benefit. He denied doing so, although he admitted having received low-value items, such as caps, small knives, and pencils, from suppliers who left them in his guard station as gifts. He also admitted to occasionally selling the small, supplier-gifted knives to coworkers. About two weeks before his termination, Vélez met with Thermo King's human resources director, Steve Soto. During that interview, Vélez again admitted receiving gifts, such as "simple" knives, from suppliers, but denied receiving more expensive gifts such as Leatherman knives.

Vélez was terminated on November 11, 2002. At the time, Thermo King did not give him a reason for his termination. After his dismissal, Vélez timely filed a complaint of employment discrimination with the Puerto Rico Department of Labor's Anti-Discrimination Unit ("ADU") and the Equal Employment Opportunity Commission ("EEOC"). On December 20, 2002, Soto reported to the ADU that Vélez had been terminated because he had accepted gifts from Thermo King suppliers. On September 23, 2003, after a

statutorily-required sixty-day period had passed and the parties were not able to come to a resolution, see 29 U.S.C. § 626(d)(1), the EEOC issued a right-to-sue letter.

Vélez initiated this suit against Thermo King on December 3, 2003, alleging violations of the ADEA and Puerto Rico Laws 80 and 100, and seeking injunctive relief, back pay, double compensatory damages, and liquidated damages. Thermo King responded to the suit by stating that it had fired Vélez because he had "received gifts, favors, services, gratuities, and products from Thermo King's suppliers and vendors without authorization of Defendant and in clear violation of a Company policy." Further, it stated for the first time that Vélez was fired because he had "sold Thermo King's property to other employees and admitted to Thermo King that he sold items received from vendors and suppliers."

On September 29, 2005, the district court adopted the report and recommendation of a magistrate judge and granted Thermo King's motion for summary judgment on all claims. We reversed that decision on the ground that the district court had failed to consider de novo, as it was required to do under 28 U.S.C. § 636(b)(1), the portions of the magistrate judge's report and recommendation to which Vélez had specifically objected. Vélez-Padro v. Thermo King de P.R., Inc., 465 F.3d 31, 32-33 (1st Cir. 2006). On remand the district court reviewed de novo the objected-

to portions of the report and recommendation and again granted summary judgment on January 3, 2008. This appeal followed.

II.

Summary judgment is properly granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We review the grant of summary judgment de novo. Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 42 (1st Cir. 2002). In so doing, we "draw all reasonable inferences from the facts in plaintiff's favor." Id.

### A. The ADEA and McDonnell Douglas

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). As the Supreme Court recently clarified, plaintiffs must "establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 129 S.Ct. 2343, 2351 (2009). As with other kinds of employment discrimination cases, however, ADEA plaintiffs rarely possess "smoking gun" evidence to prove their employers' discriminatory motivations. Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 218-19 (1st Cir. 2008). "There will

-7-

seldom be 'eyewitness' testimony as to the employer's mental processes." U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983). ADEA plaintiffs who do not have "smoking gun" evidence may nonetheless prove their cases by using the three stage burden-shifting framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[2]

The first stage of the McDonnell Douglas framework requires a plaintiff to establish a prima facie case of employment discrimination. Id. at 802. In the context of an ADEA claim for discriminatory firing, this requires a plaintiff to show that: 1) he was at least 40 years old at the time he was fired; 2) he was qualified for the position he had held; 3) he was fired, and 4) the

---

[2] In Gross, the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), utilized in Title VII cases is appropriate in the ADEA context." Gross, 129 S.Ct. at 2349 n.2; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (assuming arguendo that the McDonnell Douglas framework applies to an ADEA claim, and applying it to such a claim, "[b]ecause the parties do not dispute the issue."). This circuit, however, has long applied the McDonnell Douglas framework to ADEA cases. See, e.g., Arroyo-Audifred, 527 F.3d at 218; Torrech-Hernandez v. Gen. Elec. Co., 519 F.3d 41, 48 (1st Cir. 2008); Greenberg v. Union Camp Corp., 48 F.3d 22, 26 (1st Cir. 1995); Loeb v. Textron, 600 F.2d 1003, 1010 (1st Cir. 1979) ("We conclude that the operative principles behind McDonnell Douglas are applicable in age cases as in Title VII cases . . . ."). Other circuits also apply the framework in the ADEA context. See, e.g., Martino v. MCI Commc'n. Servs., Inc., No. 08-2405, 2009 WL 2224914 at *3 (7th Cir. Jul. 28, 2009); Smith v. Medpointe Healthcare, Inc., No. 07-1753, 2009 WL 2055104 at *3 (3d Cir. Jul. 16, 2009) (unpublished); Oliver v. Federated Mut. Ins. Co., No. 08-5416, 2009 WL 2031863 at * 1 (6th Cir. Jul. 15, 2009) (unpublished). Until told otherwise by the Supreme Court, we shall continue to do so.

employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000); Arroyo-Audifred, 527 F.3d at 219. We have described this prima facie showing as "modest," Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004), and a "low standard," Zapata-Matos, 277 F.3d at 44.

A plaintiff who makes the prima facie showing is entitled to a presumption of age-based discrimination. The burden of production then shifts to the employer "to articulate a legitimate, non-discriminatory reason for its decisions." Arroyo-Audifred, 527 F.3d at 219.[3] If the employer articulates such a reason, "the McDonnell Douglas framework -- with its presumptions and burdens -- is no longer relevant." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510 (1993). At this stage, "the sole remaining issue [is]

---

[3] As the Supreme Court has explained:

Under the McDonnell Douglas scheme, establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee. To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). 1 D. Louisell & C. Mueller, Federal Evidence § 67, p. 536 (1977). Thus, the McDonnell Douglas presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case -- i.e., the burden of producing evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason.

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993) (some internal quotation marks and citations omitted).

discrimination <u>vel</u> <u>non</u>."  <u>Id.</u> (quotation marks and citation omitted).  A plaintiff "must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'"  <u>Reeves</u>, 530 U.S. at 143 (quoting <u>Texas Dep't of Cmty. Affairs</u> v. <u>Burdine</u>, 450 U.S. 248, 253 (1981)).  Ultimately, the plaintiff's burden is to prove "that age was the 'but-for' cause of the employer's adverse action." <u>Gross</u>, 129 S. Ct. at 2351.

The district court concluded that Vélez could not raise a genuine issue of material fact over whether Thermo King's stated reasons for firing him were a pretext for age discrimination, and that it was therefore unnecessary to decide definitively whether he had established a prima facie case.  As we discuss in more detail below, we disagree with the district court's conclusion on the showing of age discrimination.  To demonstrate the full basis for our disagreement, we will set forth our analysis of the elements of the prima facie case, the genuine issues of material fact relating to the defendant's stated reason for firing the plaintiff, and why we conclude that the court's entry of summary judgment for the defendant must be vacated.

**B. The Prima Facie Case**

As the district court noted, Vélez is a person who is over forty years old and who was fired by his employer.  He

-10-

therefore satisfies the first and third prongs of the prima facie case, leaving for discussion the second and fourth prongs.

### 1. Prima facie prong two: Vélez's qualification for the position of Tool Crib Attendant

Although the district court accepted "for the sake of argument" that Vélez had established a prima facie case, the court noted its agreement with the magistrate judge that Vélez failed to establish that he was qualified for the job for two reasons: 1) Vélez had only established that he had performed satisfactorily in his own eyes, not in the estimation of Thermo King, and 2) Vélez did not disprove the honesty of Thermo King's position and belief that his actions fatally impaired its confidence in his ability to comply with the Code of Conduct. Both conclusions of the magistrate judge and the district court judge were faulty.

First, the plaintiff relied on far more than his own perceptions in making his prima facie showing that he was qualified for the job. Plaintiff pointed specifically to his long record of employment at Thermo King, a twenty-four year period without discipline or indications of deficient performance, and his promotion to Tool Crib Attendant and eight successful years at that job. These are facts of record. They are not simply plaintiff's own perception that he was qualified for the job.

Second, by concluding that Vélez was not qualified because he had not disproved the honesty of Thermo King's belief that he had violated company rules, the magistrate judge and the

-11-

district court erroneously accepted for the purpose of the prima facie analysis Thermo King's stated reason for firing Vélez as proof that he was not qualified for the Tool Crib Attendant job. This error was captured well in Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) (en banc):

> [A] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

See also Freeman v. Packaging Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988) ("legitimate expectations" prong met where plaintiff "tendered some evidence which, if believed, proved that he was doing his chores proficiently").

2. Prima facie prong four: Thermo King's continuing need for the services of Tool Crib Attendant

The district court correctly accepted the magistrate judge's finding that plaintiff had met his prima facie burden of establishing that Thermo King had a continuing need for the work that he was performing prior to his termination. Vélez stated in his deposition that the company asked two other employees --- Radamés Padró and Carlos Pérez -- to carry out the duties of the position after Vélez's departure. We previously have stated that "[a] replacement need not be sought from outside the company . . .

-12-

nor need he be designated formally as such." Loeb, 600 F.2d at 1013 n.11.

### C. Thermo King's Explanation and Vélez's Showing of Discrimination

Thermo King proffered a non-discriminatory reason for firing Vélez, asserting that Vélez was fired for violating the company's Code of Conduct and profiting financially from the sale of Thermo King property. These are both legitimate, non-discriminatory reasons for firing him. Thus, we reach the third stage of the analysis and assess whether Vélez has raised a genuine issue of material fact about whether Thermo King's stated reason is a pretext for age-based discrimination. The crucial issue is whether, upon examination of all the evidence, it can reasonably support a finding that the employer practiced age-based discrimination against Velez. We find several aspects of the evidence that, taken together, are more than sufficient to support a factfinder's conclusion that Thermo King was motivated by age-based discrimination, and which thus raise a genuine issue of material fact that defeats summary judgment. These include Thermo King's shifting explanations for its termination fo Velez, the ambiguity of Thermo King's company policy and the resulting uncertainty as to whether Velez violated it, and, most importantly, the fact that in response to arguably similar conduct by younger employees, Thermo King took no disciplinary action.

1. Shifting Explanations

In arguing that Thermo King's stated reason for discharging him was pretextual, Vélez first points to the company's shifting explanations for his termination. Thermo King did not initially provide Vélez with any reason for firing him. One month later, Soto told the ADU and the EEOC that Vélez had been fired for violating the company's policy on receiving gifts from suppliers. It was not until over a year later that Thermo King, responding to this lawsuit, first said that Vélez had been fired for stealing and selling company property. The fact that the employer gave different reasons at different times for its action surely supports a finding that the reason it ultimately settled on was fabricated.

2. The Ambiguous Company Policy

Although Thermo King argues that Vélez's admitted acceptance of gifts from suppliers was a "clear violation" of Thermo King's company policy, the record permits a contrary finding. A rational jury could conclude that Vélez's admitted acceptance of pens, caps, and "simple" knives was by no means a clear violation of Thermo King's Code of Conduct, which reads in relevant part:

> **Relationships with customers, vendors, and suppliers**: . . . If you are offered or receive any substantial gift or favor, it should not be accepted and your supervisor should be notified. This guideline does not apply to items of small value commonly exchanged in business relationships, but even in this case,

-14-

> discretion and common sense should be your
> guide.

(Emphasis added.)  By its terms, this provision does not apply to items of small value or even to selling gifted items.  To be sure, a company is ordinarily in the best position to assess the meaning of its own Code of Conduct.  We are not suggesting otherwise.  Cf. Arroyo-Audifred, 527 F.3d at 221 ("[C]ourts in employment discrimination cases may not act as 'super personnel departments,' substituting judicial judgments for the business judgments of employers.").  Nonetheless, in light of the shifting explanations given for Veléz's dismissal, the inescapable ambiguity about whether the Code of Conduct even precludes Vélez's admitted behavior in accepting and selling the small value gifts adds to the suspicion that the company's reliance on the policy may be pretextual.  See Santiago-Ramos, 217 F.3d at 56 (a plaintiff "can also establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could infer that the employer did not act for the asserted non-discriminatory reasons.") (quotation marks and citation omitted).[4]

---

[4] Vélez also argues that Thermo King's internal investigation did not begin in September 2002, as Thermo King asserts, but three months earlier in June 2002 (before the disappearance of the chipping hammer), and that this timing indicates that the investigation was simply a search for a reason to fire Vélez. Vélez cites nothing in the record in English to support this contention, however, and we therefore do not consider it. Furthermore, Vélez suggests that Quiles, Figueroa, and Trinidad

### 3. Disparate Treatment

While Thermo King's shifting explanations and ambiguous company policy support the conclusion that its explanations for Velez's discharge were pretextual, Velez needed evidence from which a jury could reasonably find that the true motivation was discrimination to defeat Thermo King's motion for summary judgment. Velez's evidence that Thermo King treated him differently from younger employees who were similarly situated is more than sufficient. Conceding only for the sake of argument that Thermo King's accusations about his theft and sale of company property are accurate, Velez asserts that younger Thermo King employees, including Trinidad, Figueroa, and Quiles, were not fired despite their complicity in the theft and/or sale of company property.[5]

---

changed their stories between their first interviews and statements taken in preparation for litigation, and that these changes impugn the veracity of the investigation and again suggest that the investigation was undertaken for the purpose of finding a false reason to fire Vélez. But Quiles is the only employee who recanted or changed any part of his original statement, and he recanted only the part in which he admitted to his own wrongdoing. Vélez does not support his suggestion that Figueroa and Trinidad changed their stories with any specific references to the record, and we find no support for that contention. Furthermore, while Quiles's claim that he confessed to violating policy because the investigators were threatening him, and the apparent failure of the company to pursue that claim, raise suspicions about the purpose and conduct of the investigation, these suspicions involve too much speculation to contribute reasonably to the proposition that the investigation was a sham designed to craft an ostensibly legal reason to fire Vélez. See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

[5] Plaintiff's brief and the record on summary judgment tell us that Trinidad is 36, Figueroa is 47, and Quiles is 28. Neither the brief nor the record, however, reveals when these employees'

Based on the evidence in this case, a jury could find that such disparate treatment existed, exposing the pretextual nature of Thermo King's proffered explanation for firing Velez and revealing that Thermo King's true motivation was age discrimination.

An employer's disparate treatment of employees in response to behavior that legitimately offends the employer can provide evidence of discriminatory animus. See McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 283 (1976) ("While Santa Fe may decide that participation in a theft of cargo may render an employee unqualified for employment, this criterion must be 'applied[] alike to all members of all races . . . .'") (quoting McDonnell Douglas, 411 U.S. at 804). But, in order to be probative of discriminatory animus, a claim of disparate treatment "must rest on proof that the proposed analogue is similarly situated in material respects." Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 752 (1st Cir. 1996). We examine "whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. While an exact correlation is not necessary, the proponent must demonstrate that the cases are fair congeners." Id. (internal quotation marks and citation omitted).

The district court rejected Vélez's disparate treatment argument on the ground that the other employees who had committed misconduct were not "similarly situated" because they had not been

ages were measured.

-17-

implicated in the sale of company property for their own pecuniary benefit.  Elaborating on this point, Thermo King argues here, as it did below, that Vélez's behavior is distinguishable from those other employees because "none of the employees that admitted taking tools or materials for their personal use at home, or that admitted receiving gifts from suppliers during the investigation conducted by CRI, profited from Thermo King's property or made a business out [of] the Company tools and materials."  Thermo King describes this distinction as "an objective criteria and a critical difference" between Vélez and the non-fired employees.

A rational jury could view this distinction as so meaningless that it masks a different purpose for distinguishing among the employees -- their ages.  The summary judgment record established that Trinidad admitted to stealing tools from Thermo King and purchasing property he believed was stolen from Thermo King, and that he was accused by other employees of stealing tools from Thermo King.  Figueroa admitted to purchasing property she believed was stolen from Thermo King, and Quiles admitted to stealing tools from Thermo King and failing to observe company rules when he was in charge of the tool warehouse.  Although Vélez is the only employee who is alleged to have profited monetarily, the other employees stole for their own benefit, knowingly bought stolen Thermo King property, and facilitated the sale of stolen Thermo King property to others.  Furthermore, Trinidad, Figueroa, and Quiles

each admitted to taking part in illegal and unethical activities, whereas Vélez adamantly insisted from the beginning of the investigation that he did not. In light of the other employees' similarly culpable behavior, their admissions to wrongdoing, and the lack of any coherent explanation of why Vélez's alleged profits made him an unworthy employee while the others remained worthy, a jury might reasonably distrust Thermo King's "monetary profit" distinction and conclude that age was the true basis for distinguishing among them.[6]

Of course, "[i]n assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) (internal quotation marks and citations omitted). We understand that "[i]t is not enough for a plaintiff merely to impugn the veracity of the employer's justification; he must elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive of discrimination.'" Azimi, 456 F.3d at 246

---

[6] In rejecting plaintiff's disparate treatment argument, the district court wrote that "the fact that other younger employees admitted to taking company property and were not fired, does not make it mandatory to infer that plaintiff's dismissal was discriminatory." (Emphasis added.) This statement, and others like it in the district court's order, reflect a misapprehension of the summary judgment standard, where the question is whether there is a genuine dispute of material fact, not whether the evidence compels a finding in favor of the non-moving party.

(quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)).  Here, plaintiff has made a showing that the situations of other employees are "fair congeners," Perkins, 78 F.3d at 751, and that Thermo King's stated explanation for firing Vélez and not the others so lacks rationality that it supports the inference that the real reason for firing Vélez was his age.  See, e.g., St. Mary's Honor Ctr., 509 U.S. at 511 (noting that a "suspicion of mendacity" may be particularly influential to a jury's determination of whether an employer seeks to cover up intentional discrimination).

### D. Conclusion

The ultimate question on summary judgment in this ADEA case is "whether or not the plaintiff has adduced minimally sufficient evidence to permit a reasonable factfinder to conclude that he was fired because of his age." Dávila v. Corporación de P.R. Para La Difusión Pública, 498 F.3d 9, 16 (1st Cir. 2007). Evidence establishing a prima facie case, in combination with evidence of pretext, can be sufficient to defeat summary judgment if a rational factfinder could conclude that unlawful age discrimination was the actual, but-for cause of the discrimination. Domínguez-Cruz, 202 F.3d at 430 n.5 (quoting Rodriguez-Cuervos v. Wal-Mart Stores, 181 F.3d 15, 22 n.5 (1st Cir. 1999)).  Here, the prima facie case, Thermo King's shifting explanations for firing Vélez, its reliance on an ambiguous company policy, and the unusually strong evidence of disparate treatment, viewed in the

light most favorable to Vélez, would allow a rational factfinder to conclude that age discrimination was the determinative factor in Vélez's dismissal. Therefore, we must vacate the district court's grant of summary judgment on the ADEA claims.

The district court based its dismissal of plaintiff's Puerto Rico Law 80 and Law 100 claims on the dismissal of the ADEA claims.[7] In light of our ruling that Vélez's ADEA claim must be reinstated, we must vacate the summary judgment on the Puerto Rico law claims as well.

The judgment is vacated, and the case is remanded for further proceedings consistent with this decision. Costs are awarded to Jóse Vêlez.

So ordered.

---

[7] Law 100 provides similar protection against age-based discrimination as that provided by the ADEA. Under Law 100, however, plaintiff's burden is lighter: "absent just cause for dismissal, the plaintiff's prima facie case creates a rebuttable presumption of discrimination which shifts to the defendant not only the burden of producing the evidence, but also of persuading the trier." Menzel v. Western Auto Supply Co., 848 F.2d 327, 331 (1st Cir. 1988) (quotations and emphasis omitted). To defeat that presumption, "the employer must prove, by a preponderance of the evidence, that the challenged action was not motivated by a discriminatory age animus." Alvarez-Fonseca v. Pepsi Cola of P.R. Bottling Co., 152 F.3d 17, 27-28 (1st Cir. 1998). Law 80 provides a compensation remedy for individuals terminated without just cause. Otero-Burgos v. Inter Am. Univ., 558 F.3d 1, 1 (1st Cir. 2009).