THOMPSON, Circuit Judge,
dissenting.
While it is true that the record, as is, fails to demonstrate discriminatory animus, Tyree cannot be expected to prove that which she was not properly afforded an opportunity to ascertain during discovery. The majority dismisses Tyree’s claim that she was wrongly denied a fair opportunity to discover crucial evidence (namely, information regarding how quickly the Volpe Center responded to other SOWs). Because I agree with Tyree that the district court erred in denying her pro se discovery requests, and therefore incorrectly denied her the opportunity to discover the very evidence she needed to survive the Volpe Center’s motion for summary judgment, I respectfully dissent.
I. A Recap
During discovery, Tyree filed two sets of interrogatories, both of which requested information regarding other SOWs approved by the Volpe Center. Tyree specifically sought information regarding the customer type or collaborators involved in the creation of each SOW and the amount of time it took to complete the SOWs and enter into the resulting agreements.[8] In *44 response to Tyree’s discovery requests, the Volpe Center provided information regarding CRADA-related SOWs only, which it argued were the only type of SOWs relevant to Tyree’s case.
Thwarted in her attempts to uncover this and other information, Tyree filed a motion to compel the First Set of Interrogatories, requesting, among other things, that the district court require the Volpe Center to provide the requested information regarding all SOWs. The district court denied this first motion, finding the interrogatories sought irrelevant.
Undeterred, Tyree filed a second motion to compel, seeking solely information regarding other SOWs approved by the Volpe Center. In this second motion, she argued that the Volpe Center’s usual treatment of SOWs, whether CRADA-related or otherwise, was directly relevant to her claim that the Volpe Center had improperly delayed her SOW for discriminatory reasons. She also argued that the Volpe Center had waived its objections to her' Second Set of Interrogatories because its responses had been untimely. The district court denied Tyree’s second motion to compel with a one-line docket entry sans explanation. Tyree appealed both denials, along with the court’s later summary judgment ruling.
II. Merits
As stated by the majority, we review discovery orders for abuse of discretion and may reverse upon a showing that the lower court’s discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party. See In re Subpoena to Witzel, 531 F.3d 113, 117 (1st Cir. 2008) (quoting Saldaña-Sánchez v. López-Gerena, 256 F.3d 1, 8 (1st Cir. 2001)). Contrary to my colleagues, I think Tyree has met that standard here.
Although a district court typically has broad discretion in resolving discovery objections, “[sjummary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery.” Dean v. Barber, 951 F.2d 1210, 1213 (11th Cir. 1992) (quoting Snook v. Trust Co. of Ga., 859 F.2d 865, 870 (11th Cir. 1988)). Tyree, who was pro se at the time she sought the discovery at issue, did not have an adequate opportunity for discovery in this case.
In her First and Second Interrogatory Requests, Tyree sought a list of all SOWs accepted and approved for any agreements entered into by the Volpe Center.[9] Tyree specifically sought information regarding the “duration of time it took each Statement of Work to be completed,” including “the date the Statement of Work was initiated” and “the customer type or vendor type or collaborators” involved in the creation of the SOWs.
Despite the district court’s ruling to the contrary, these requests were clearly relevant to Tyree’s claim that the Volpe Center delayed the process of creating her SOW in particular, and could have supported her claim that the Volpe Center discriminated against her in ultimately fa.il- *45 ing to enter the proposed CRADA. In other words, if Tyree could have shown that in other similar agreements, the Volpe Center took significantly less time to produce SOWs and then swiftly entered into the resulting agreements, this could have served as circumstantial evidence that the delays in Tyree’s case were unusual, and thus perhaps due to discriminatory animus. How the Volpe Center handled other SOWs therefore could have answered whether Tyree was treated disparately and, by extension, may have created a genuine issue of fact with respect to whether the Volpe Center’s articulated reason for failing to enter into the CRADA with Tyree was a pretext for discrimination.
But because the district court denied Tyree’s motions to compel, we have no idea what other SOWs were entered into by the Volpe Center, what their usual procedure was in creating the SOWs, the time that it took to create those SOWs and eventually enter into the resulting agreements, or with whom those SOWs were created — all information that very well could have demonstrated disparate treatment potentially driven by discriminatory animus in Tyree’s case.
The majority finds the link between non-CRADA and CRADA related SOWs to be so attenuated as to render non-CRADA SOWs irrelevant to Tyree’s claims, maintaining that even if pursued such discovery would result in “sideshow examinations of differences between the different SOWs, who did them, complexities, etc.” However, relevancy is not contingent on the avoidance of complexity or the parsing out of similarities and/or differences. To the contrary, “[i]n discovery, the parties are given broad range to explore ‘any matter, not privileged, which is relevant to the subject matter involved in the pending action’ so that théy may narrow and clarify the issues and obtain evidence or information leading to the discovery of evidence for future use in the trial.” See Anderson v. Cryovac, Inc., 805 F.2d 1, 12 (1st Cir. 1986) (quoting Fed. R. Civ. P. 26(b)(1)). Discovery demands the very examination derided by the majority.
The information Tyree requested was thus clearly relevant, and the district judge’s ruling as to both motions to compel was plainly wrong. This also resulted in substantial prejudice, as Tyree was foreclosed from discovering the very information essential to withstand the Volpe Center’s motion for summary judgment.
Moreover, the district'judge’s denial of Tyree’s second motion to compel, without so much as a cursory explanation of her rationale was, in itself, an abuse of discretion. See Howland v. Kilquist, 833 F.2d 639, 646 (7th Cir. 1987) (quoting Darden v. Illinois Bell Tel. Co., 797 F.2d 497, 502 (7th Cir. 1986)) (“[A] decision made in the absence of a basis is an abuse of discretion”). The majority’s contention that the district court did not abuse its discretion in rejecting Tyree’s argument that the Volpe Center waived its discovery objections ignores the issue at hand. The issue is not the district court’s rejection of Tyree’s waiver argument — the issue is that the district court proffers no explanation of its rationale or the basis of its finding. That, I believe, was an abuse of discretion.
The majority lastly notes that Tyree’s pro se briefs “baldly assert[ ] error in the discovery ruling” without offering any arguments for why non-CRADA related SOWs were necessary. My colleagues seek to dismiss Tyree’s discovery claims because of their inartful development in her pro se briefs. But I disagree that we can so hastily dispose of her pro se arguments. While the majority is correct that “issues adverted to in a perfunctory manner, unaccompanied by some effort at developed *46 argumentation are [typically] deemed waived,” United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), that simply is not the case here, where a pro se plaintiff clearly asserted her complaints to the best of her abilities and, as made apparent by the quality of her pro se briefs, did her best to develop arguments in support of her discovery claims.
Generously construing her arguments, as we are required to do for pro se litigants, see Wedeen v. Green River Power Sports, 14 Fed.Appx. 6, 6-7 (1st Cir. 2001) (noting that “our judicial system zealously guards the attempts of pro se litigants on their own behalf’) (citing Ahmed v. Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997)), I think it is clear that Tyree sufficiently raised her discovery claims and accompanied her claims with some effort at developed argumentation. Her briefing cannot be held to the same standards of trained counsel. See United States v. Dunbar, 553 F.3d 48, 63 n.4 (1st Cir. 2009) (holding that, although an argument was not stated “artfully,” it was not waived where the brief identified the relevant facts and law).
Because I think the judge abused her discretion in denying Tyree access to relevant information during discovery, I respectfully dissent from the majority opinion. Plaintiffs “rarely possess ‘smoking gun’ evidence to prove their employers’ discriminatory motivations,” Vélez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 446 (1st Cir. 2009) (quoting Arroyo-Audifred v. Verizon Wireless, Inc., 527 F.3d 215, 218-19 (1st Cir. 2008)), and the reality remains that outright admissions of impermissible discriminatory animus are infrequent and hard to come by. See Hunt v. Cromartie, 526 U.S. 541, 553, 119 S.Ct. 1545, 143 L.Ed.2d 731 (1999). Against this backdrop, the importance of adequate discovery is all the more vital, particularly for pro se plaintiffs. Thus, I think the proper course here would be to reverse both the judge’s discovery rulings and her grant of summary judgment in favor of the Volpe Center, so that Tyree might properly conduct discovery.

. Tyree’s First Set of Interrogatories specifically sought:
... a list, describing] with great detail and specificity all of the agreements the Volpe Center has accepted and approved from January 1st, 2007 to July 1st, 2013, that either contained a statement of work or required a reference to a statement of work or required a reference to a statement of work (sow) in the agreement. For each
agreement include the following in the description:
a) the agreement type,
b) the customer type or vendor type,
c) the RVT number(s) associated with the agreement,
d) the frequency of contact between the Volpe Center’s Point of Contact (POC) or a representative and the customer/vendor (POC) or any of their representatives,
*44 e) the duration of time it took each agreement to be turnaround/approved form initial contact concerning the agreement to the date it was finalized and signed,
f) the date of initial contact concerning the agreement,
g) the date the agreement was finalized and signed.

. Tyree’s First and Second Interrogatory Requests contain requests that are substantively similar, with her First Interrogatory seeking information including all of the '‘agreements” entered into by the Volpe Center which contained SOWs, and her Second Interrogatory seeking information regarding all "SOWs within agreements” entered into by the Volpe Center.