Fernando **GUTIERREZ–LINES**, Plaintiff,

v.

**PUERTO RICO ELECTRIC AND POWER AUTHORITY,**
Defendant.

**Civil No. 07–2187 (DRD).**

United States District Court,
D. Puerto Rico.

Nov. 17, 2010.

Carlos T. Gonzalez–Contreras, Jose F. Quetglas, Quetglas Law Office, San Juan, PR, for Plaintiff.

Arturo Diaz–Angueira, Elizabeth Del Pilar Villagrasa–Flores, Cancio, Nadal, Rivera & Diaz, PSC, San Juan, PR, for Defendant.

## OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

On March 15, 2010, Defendant filed its *Motion for Partial Summary Judgment* (Docket No. 50).[1] In that submission,[2] Defendant asserts that Plaintiff may not succeed on his constructive discharge theory of age discrimination as his working conditions were not sufficiently onerous, difficult or unpleasant to cause a reasonable person to resign. Defendant highlights Plaintiff's inability to show that Defendant's actions were undertaken with a discriminatory animus rather than because Plaintiff failed to perform his job adequately. Defendant also asserts that Plaintiff can not succeed on his hostile work environment theory[3] as any unpleasantness in the workplace was attributable to Plaintiff's failure to comply with the

---

1. The Court understands that this motion for summary judgment is "partial" only as it requests the dismissal without prejudice of claims attached via the exercise of the Court's supplemental jurisdiction because the relief sought is premised on full dismissal with prejudice of all Plaintiff's federal claims.

2. Defendant included his statement of uncontested material facts within the body of his motion, pursuant to an antiquated local rule, and in a manner at odds with the currently applicable local rule. *See* Local Rule 56(b) ("A motion for summary judgment shall be supported by a separate, short and concise statement of material facts.") However, as the presentation of facts otherwise complies with the currently applicable rule, the Court has elected to consider the facts, rather than striking them and rendering the motion for summary judgment impotent. The Court also notes that Plaintiff's opposing statement of material facts does not comply with Local Rule 56's mandate that each statement of fact be contained in a separate, numbered paragraph with a record citation pertaining to each statement of fact. As detailed below, the Court has afforded Plaintiff as much lenience as possible when reading his fundamentally flawed statement of facts; thus, the Court extends the same courtesy to Defendant.

3. The Court understands that Defendant opposes Plaintiff's retaliation claim with the same line of argumentation as Plaintiff responded by arguing that brevis disposition of

requirements of his position and that the complained-of behavior which Plaintiff cites was insufficient to meet the strictures of the test for a hostile work environment. At the conclusion of its motion, Defendant requests that the Court also dismiss Plaintiff's supplemental claims as the Court only exercised jurisdiction over those claims in tandem with its original federal question subject matter jurisdiction.

After two extensions of time, Plaintiff filed his opposition to Defendant's motion for summary judgment (Docket No. 59) on June 1, 2010. Therein, Plaintiff alleges that he has produced evidence of sufficiently severe and pervasive conduct indicating age discrimination that a reasonable jury could find the existence of a hostile work environment in the instant case. Specifically, Plaintiff alleges that he was the recipient of age-based remarks which ridiculed and humiliated him. Further, Plaintiff alleges that his supervisor altered the terms and conditions of his employment in other ways, thus harassing Plaintiff. Additionally, Plaintiff avers that the harassment which he suffered resulted in his constructive discharge. Finally, Plaintiff alleges that he can prove a retaliation claim against Defendant as Defendant retaliated against him for complaining about the alleged discrimination to the Head Division Manager, when he sought pre-complaint counseling, when he lodged a complaint with the local Equal Employment Opportunity Office ("EEOO") and when he filed charges of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").

On June 15, 2010, Defendant filed its *Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment* (Docket No. 65). In that filing, Defendant argues that Plaintiff relies upon assertions from a post-deposition unsworn statement[4] which contradicts his previous testimony provided under oath at his deposition without providing a satisfactory explanation for the change. Accordingly, Defendant alleges that Plaintiff's proffered evidence demonstrating that age discrimination was the exclusive motive for the adverse employment action taken against him is inadmissible as an opposition to the summary judgment request.

Finally, on July 2, 2010, Plaintiff filed a surreply (Docket No. 72). In that motion, Plaintiff alleges that the assertions provided in the unsworn statement are not contradictory to the testimony given at his deposition, but, rather, merely provide more detail regarding events alluded to in his deposition. Further, Plaintiff notes that he enunciated the proposed facts challenged by Defendant previously in his EEO complaint.

## II. SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

that claim was inappropriate in his response. The Court presumes that the root of the ambiguity lies with Plaintiff's *Complaint* (Docket No. 1), which fails to conclusively identify the specific claims which Plaintiff pursues under each cause of action. As Plaintiff proceeded *pro se* at the time when the complaint was filed, the Court has allowed both parties as much leeway as possible as to any matter relating to vagueness which finds root in the complaint. Counsel appeared for the first time on Plaintiff's behalf after the complaint was filed, but before Defendant answered (Docket No. 3), so the Court does not afford any further leeway based on *pro se* status when reviewing subsequent filings, including the opposition to the motion to dismiss.

4. The unsworn *statement is, in actuality,* Plaintiff's opposing statement of material facts itself, whose veracity Plaintiff verified with his signature.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts[;]" as well as that it is "entitled to judgment as a matter of law." *Vega–Rodriguez v. Puerto Rico,* 110 F.3d 174, 179 (1st Cir.1997). A fact is "material" where it has the potential to change the outcome of the pending suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. *Id.* Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. *Id.*

After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." *Cortes–Irizarry v. Corporacion Insular,* 111 F.3d 184, 187 (1st Cir.1997).

At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment." *Cadle Co. v. Hayes,* 116 F.3d 957, 959–60 (1st Cir.1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prod.,* 530

U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)(quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. *See Poller v. Columbia Broad. Sys.,* 368 U.S. 464, 470, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962)(summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); *see also Pullman–Standard v. Swint,* 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)("[F]indings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); *see also Dominguez–Cruz v. Suttle Caribe, Inc.,* 202 F.3d 424, 433 (1st Cir.2000)(finding that "determinations of motive and intent ... are questions better suited for the jury"). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 95 (1st Cir.1996).

## III. FACTUAL BACKGROUND

When analyzing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party, in this case favoring Plaintiff. *See Vera v. McHugh,* 622 F.3d 17, 25–27 (1st Cir.2010); *see also Agusty–Reyes v. Dept. of Edu.,* 601 F.3d 45, 48 (1st Cir.2010); *see also Cadle Co.,* 116 F.3d at 959–60. However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." *Vera,* 622 F.3d at 26 (internal quotations and citation omitted). Further, the Court will not consider hearsay statements nor allegations presented by parties that do not properly provide specific refer-

ence to the record. *See* L.Civ.R. 56(e)("The [C]ourt may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced."); *see also Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 33 (1st Cir.2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate); *see also Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.")

■ Prior to embarking upon the relevant narrative, the Court notes that large portions of Plaintiff's opposing statement of facts, spanning full paragraphs and, in one instance, multiple pages, fail to cite to any supporting evidence. Thus, the Court shall not accept these proposed facts and does not recite them below. *See* L.Civ.R. 56(e); *see also Caban Hernandez v. Philip Morris, USA, Inc.*, 486 F.3d 1, 7 (1st Cir.2007)("Given the vital purpose that [the Local Rules regarding summary judg-ment] serve, litigants ignore them at their peril.") The Court has also found several assertions of fact[5] which are hyperbolic and only partially supported[6] by the cited evidentiary record; in these instances, the Court draws its reading of each such fact directly from the evidence proffered to support the assertion of fact, rather than from the overstated versions proffered by Plaintiff. Keeping these limitations firmly in mind, the Court proceeds to recite the following properly-supported facts in the light most favorable to Plaintiff.

Plaintiff is a resident of the Commonwealth of Puerto Rico and a citizen of the United States of America. At all times relevant to the instant action, Plaintiff was employed by the Puerto Rico Power Authority ("PREPA"). PREPA is a public corporation of the Commonwealth of Puerto Rico, created by law as a separate legal entity from the Commonwealth of Puerto Rico, and is capable of both suing and being sued.[7]

In March of 1997, Plaintiff was assigned to the Suppliers Registry Office of PREPA as a Systems and Suppliers Methods Analyst. Plaintiff asserts that, in addition to the duties listed in his job description,[8] he

5. The referenced assertions of fact occur both within the response to Defendant's statement of facts and in the Plaintiff's counter statement of facts. In several instances, Plaintiff rebuts Defendant's proffered facts by reference to later facts asserted in the counter statement without providing proper record citation to any evidence of record. The Court shall not consider these rebuttals as proper denials of Defendant's proffered facts as they fail to comply with the local anti-ferreting rule. *See* L.Civ.R. 56(e). Accordingly, the Court deems admitted the facts to which these improperly supported denials pertain, although the Court has separately considered the counter facts cited therein. *See e.g. A.C. Orssleff*, 246 F.3d at 33.

6. The Court notes that many of Plaintiff's proffered "facts" are only tangentially related to the evidentiary record which Plaintiff cites in their support and require the Court to make several assumptions which are not directly supported by the record in order to span the sizeable gap between the "facts" and the evidentiary support. The Court declines to accept these "facts" as true, therefore, as they constitute unreasonable inferences and conjecture. *See Vera*, 622 F.3d at 25–27.

7. As a public corporation controlled by local government, PREPA is amenable to suit. P.R.Laws Ann. tit. 22, §§ 193 & 196; *see e.g. Berrios–Cintron v. Cordero*, 976 F.Supp. 110, 111 n. 1 (D.P.R.1997).

8. Although Plaintiff fails to provide any citation to evidence which supports his assertion that these duties fell outside the realm of the duties encompassed by his job description in connection with this proffered fact, the Court

was assigned additional duties to which he took umbrage. These duties included (1) operating the photocopier, fax and personal computers; (2) using the personal computers connected to the Administrative Services Directorate Network System; (3) entry and verification of financial statement dates; and (4) financial statement analysis.

On or about September 11, 2005, Idsa Alvarez Cepeda ("Alvarez") was appointed to the position of General Purchasing Supervisor and was subsequently assigned the duties pertaining to the Supervisor of the Suppliers Registry, where Plaintiff worked. Thus, Alvarez was Plaintiff's supervisor from approximately the time of her appointment until Plaintiff retired from his position of employment at PREPA. When Alvarez became Plaintiff's supervisor, Plaintiff was the most senior[9] of the employees in the Registry.

While acting as Plaintiff's supervisor and during approximately the last year to year and a half of Plaintiff's employment with PREPA, Alvarez forbid Plaintiff from dealing directly with suppliers and forbid Plaintiff from utilizing the phone lines that connected with external phone networks, although she occasionally allowed him to use the internal phone network. Further, Plaintiff stated in his deposition that Alvarez "suppressed" his work with financial statements and re-assigned an indeterminate number of his previous duties to other coworkers. Plaintiff also believed that he was at a disadvantage in completing some of his duties as he did not have the same clerical background as various co-workers.

Additionally, while Alvarez sent Plaintiff to the first summit of bidders hosted by the Commonwealth of Puerto Rico at the Condado Plaza Hotel in either 2004 or 2005, she elected not to include Plaintiff in the second summit delegation, sending younger staffers instead, although Plaintiff was the only member of the group with a participation certificate from the sole bidders registry.[10]

On December 12, 2006, Alvarez sent a memorandum to all Registry employees containing the minutes of a meeting held on December 7, 2006 (the "December meeting"). Plaintiff acknowledged receipt of the memorandum on December 18, 2006. According to the memorandum, the following matters were discussed in the meeting: the filing system as it pertained to each supplier, the number of files each employee should work with on a daily basis and the orientation and service to be provided to suppliers. Specifically, employees were to file documents relating to suppliers in accordance with an established procedure under which each employee was assigned an alphabetical section of the suppliers for which he or she was personally responsible. Additionally, employees were told that they should provide information to suppliers and end-users as necessary, regardless of the alphabetical categorization of the supplier.

On February 27, 2007, another meeting (the "February meeting") was held for employees of the Registry. Plaintiff was present at this meeting. In this meeting, Alvarez discussed the filing system method as well as the data entry procedures for

finds support for this assertion elsewhere and, thus, acting out of an abundance of caution despite Plaintiff's failure to comply with the local anti-ferreting rule, accepts this fact as true.

9. Seniority in this context means the number of years of experience working for PREPA

held by the employee, not the age of the employee.

10. No evidence is presented that ties this certificate to any knowledge or skill necessary or even desirable for participants in this summit.

each document received from suppliers. Alvarez also indicated that random audits of the files were to be conducted in order to verify that the task was being completed by the employees properly and that failure to properly complete the task would result in notification of the employee who was responsible for the offending portion of the files. After that meeting, Plaintiff was notified via letter that failure to complete this duty would result in disciplinary action.

After the February meeting, Plaintiff failed to perform the filing duties outlined and explained in the December and February meetings. Alvarez granted Plaintiff an extension of time in which to comply with these duties and warned him that further failure to perform these duties would result in disciplinary measures. On May 14, 2007, Plaintiff was informed that ten files assigned to him, which had been picked at random, were not properly organized and needed to be corrected. On July 3, 2007, Alvarez informed Plaintiff that he had failed to correct these errors.[11]

In the meantime, Plaintiff approached his union regarding the duties assigned to him by Alvarez, asserting that these duties fell outside those listed in his job description. On May 29, 2007, the president of the U.E.P.I. syndicate sent a letter to Alvarez explaining that certain duties, particularly purging files, assigned to Plaintiff, fell outside of his duties pursuant to the Collective Bargaining Unit with U.E.P.I.,

as well as the U.T.I.E.R. The president then requested that Alvarez cease to assign such duties to Plaintiff and not take further administrative or disciplinary actions against him. In total, Plaintiff lodged three complaints with U.E.P.I. regarding his treatment and the duties assigned to him. Plaintiff also lodged an EEO complaint on April 2, 2007. After evaluating Plaintiff's complaint, on April 19, 2007, the EEO Office determined that the conduct of which he complained of was administrative in nature and, accordingly, was inappropriate for an EEO discrimination investigation. On July 26, 2007, Plaintiff filed an EEOC complaint.

Alvarez never issued a notice of intent or otherwise initiated any process to separate Plaintiff from his position at the Suppliers Registry Office. However, on an undisclosed number of occasions, she did state that Plaintiff should know better than to engage in various activities because of his age or the amount of time which he had worked at PREPA. Plaintiff's two co-workers, Mercedes Almeida ("Almeida")and Berlitz Torres ("Torres"), who worked in close proximity to Plaintiff, never heard Alvarez make any comments directly relating to Plaintiff's age. In his deposition, Plaintiff stated that he believed Alvarez' actions towards him were motivated by his age because of "her daily treatment [of Plaintiff], the way she looked at [him] . . . [and] the way she shouted at [him]."[12] In his deposition testimony,[13]

---

11. The warnings provided to Plaintiff are memorialized in a series of letters outlining his failure to perform the filing duties assigned to him.

12. Although, as noted in the reply and surreply to the motion to dismiss, Plaintiff later offered further explanations in an unsworn statement, because the unsworn statement was interwoven indiscriminately with the body of Plaintiff's opposing statement of material facts in contravention of Local Rule

56(c), which mandates that such a statement must be a "separate, short and concise statement of material facts" with proper citation to evidence of record, the Court has not considered the proffered explanations in its treatment of the instant factual background. Plaintiff cannot hope to bypass the strictures of the Local Rules and cure all the defects of his opposing statement of material facts by merely offering his opposing statement in the form of an unsworn statement. *See Caban*

Plaintiff also complained that Alvarez moved or wrote on items on his desk, demanded further information regarding vacation time planned by Plaintiff to take his son to college, debited visits to the State Insurance Fund against Plaintiff's vacation time, spoke to Plaintiff sarcastically, requested an audit of Plaintiff's payroll and leave, complained of Plaintiff's tardiness and the state of his desk, required Plaintiff to attend computer seminars and failed to include a necessary clause in the personnel action that was necessary for Plaintiff's retirement to be approved. Plaintiff asserts generally that Alvarez did not treat his younger coworkers in this manner.

On October 25, 2007, Plaintiff notified PREPA that he would be voluntarily retiring from PREPA, effective on January 12, 2008, after completing the requisite number of years of service under PREPA's retirement plan. At the time when Plaintiff retired, Alvarez was forty-seven years old and his co-worker, Almeida, was forty-nine years old. Plaintiff was fifty-six years old when he retired.[14]

## IV. ADEA CONSTRUCTIVE DISCHARGE CLAIM

Although Plaintiff's complaint never specifies with particularity under which theories he pursues his ADEA discrimination claims, in the course of the instant case, a constructive discharge theory based upon a hostile work environment has materialized. Under this theory, Plaintiff asserts that the treatment which he received from Alvarez was sufficiently severe to constitute a hostile work environment, which, in turn, led to his constructive discharge.

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to

*Hernandez,* 486 F.3d at 7 ("Given the vital purpose that [the Local Rules regarding summary judgment] serve, litigants ignore them at their peril.") Accordingly, the Court faced the choice of either considering the entire opposing statement of material facts an unsworn statement unaccompanied by a statement of material facts in compliance with the Local Rule, thus admitting as unqualified all Defendant's proffered facts and rendering Plaintiff's response to Defendant's motion for summary judgment entirely toothless or of reviewing the opposing statement as a statement of proposed facts, rather than as evidence itself. Thus, choosing the route that imputed the least harm to Plaintiff, the Court has reviewed the facts of the instant case in the manner dictated by the Local Rule, verifying the facts presented against the evidence of record cited by Plaintiff. *Cf. Velez v. Marriott PR Mgt., Inc.,* 590 F.Supp.2d 235, 248 (D.P.R.2008)(holding that a plaintiff cannot simply incorporate a sworn statement under penalty of perjury into the body of her opposing statement of material facts under Local Rule 56). Thus, the Court has not set forth the other statements regarding Alvarez' conduct and statements directed towards Plaintiff that were not properly supported by citations to evidence of record and which, accordingly, violated the anti-ferreting rule.

**13.** In his proposed counter fact number 2.5, Plaintiff provides both Defendant and the Court with a three-page long "statement of fact," for which Plaintiff provides a general end cite to a letter for which no exhibit number is provided in contravention of Local Rule 56 as well as miscellaneous portions of a twenty nine page collection of excerpts from his deposition, attached as an exhibit. This statement of fact is an egregious violation of the anti-ferreting rule and, accordingly, the Court need not consider it. *See e.g. Velez,* 590 F.Supp.2d at 248; *see also A.C. Orssleff,* 246 F.3d at 33. However, acting in benevolence, and because in this instance Plaintiff has provided a direct citation to portions of his deposition contained within the record, albeit a non-complying citation, the Court has reviewed the cited exhibit in its entirety and has extrapolated the facts set forth hereafter from that exhibit.

**14.** As this fact is not proffered in evidence, but appears to be undisputed, the Court drew it from the complaint.

discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The Supreme Court has clarified that, in order for a plaintiff to set forth an ADEA discrimination claim, he or she must "establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Fin. Svcs., Inc.,* — U.S. ——, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009); *see also Velez v. Thermo King de Puerto Rico,* 585 F.3d 441, 446 (1st Cir.2009); *see also Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 823 (1st Cir.1991) ("The plaintiff in an ADEA discrimination suit bears the ultimate 'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'") (quoting *Freeman v. Pkg. Mach. Co.,* 865 F.2d 1331, 1335 (1st Cir.1988)).

■■ Where, however, a plaintiff cannot present the Court with direct evidence of an employer's discriminatory motivations, he or she may prove discriminatory animus by utilizing the three stage burden shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Thermo King,* 585 F.3d at 446. Under this familiar framework, a plaintiff must first set forth a prima facie showing of age discrimination. *Id.; see also Sabinson v. Trustees of Dartmouth College,* 542 F.3d 1, 4 (1st Cir.2008); *see also Mesnick,* 950 F.2d at 823. This burden is not onerous. *E.g. Sabinson,* 542 F.3d at 4. It merely "requires demonstration that (i) the plaintiff was over the age of forty, (ii) his work was sufficient to meet his employer's legitimate expectations, (iii) his employer took adverse action against him, and (iv) the employer sought a replacement with roughly equivalent job qualifications, thus

revealing a continued need for the same services and skills." *Mesnick,* 950 F.2d at 823; *see also Thermo King,* 585 F.3d at 447 (setting forth the prima facie case as it particularly applies to employees whose employment is terminated).

■ Once the plaintiff meets this burden, "[t]he burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decisions." *Thermo King,* 585 F.3d at 447 (internal quotation omitted). Once the employer articulates such a reason, the burden shifts back to the plaintiff, who is "afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000))(internal quotation omitted). Thus, "[u]ltimately, the plaintiff's burden is to prove that age was the 'but-for' cause of the employer's adverse action." *Id.* (quoting *Gross,* 129 S.Ct. at 2351); *see also Davila v. Corporacion de Puerto Rico para la Difusion Publica,* 498 F.3d 9, 17 (1st Cir.2007)("[T] must be some significantly probative evidence from which the factfinder can infer that the employer discharged the employee because of his age. Proof of pretext may give rise to such an inference; proof of a mistaken judgment does not.").

As Plaintiff was fifty-six years old at the time when he retired, he clearly meets the first prong of the prima facie test for age discrimination under a constructive discharge theory. Additionally, all of the conduct to which Plaintiff has taken umbrage occurred well after his fortieth birthday. Further, although Plaintiff received warnings for failure to perform certain tasks, as discussed *infra,* Defendant does not contest that Plaintiff has set forth

sufficient facts to surpass the modest hurdle regarding Plaintiff's job performance set by the second prong of the prima facie test.[15] Further, although the facts set forth by Plaintiff, as pruned for non-complying material above, do not set forth any evidence regarding the fourth prong of the prima facie case, Defendant does not contest this prong either.

■ Thus, only the third prong,[16] that requiring an adverse employment action, remains for the Court's analysis. Where, as in the instant case, a plaintiff in an employment discrimination case alleges that the adverse employment action which he suffered was an unpleasant working environment that resulted in his discharge, it "presents a special wrinkle that amounts to an additional prima facie element." *Landrau–Romero v. Banco Popular de Puerto Rico,* 212 F.3d 607, 612 (1st Cir.2000)(making this statement in a Title VII context); *see also Torrech–Hernandez v. Gen. Elec. Co.,* 519 F.3d 41, 50 (1st Cir.2008)(outlining the additional requirements of an ADEA constructive discharge theory prima facie case). Under the constructive discharge theory, the plaintiff hopes to show that the employer engaged "in a calculated, age-inspired effort to force an employee to quit." *De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 117 (1st Cir.2004). Not all unpleasant conduct is sufficient to show constructive discharge; rather, a plaintiff must show that "the working conditions imposed by the employer had become so onerous, abusive, or unpleasant that a reasonable person in the employee's position would have felt compelled to resign." *Velazquez–Fernandez v. NCE Foods, Inc.,* 476 F.3d 6, 12 (1st Cir. 2007). The First Circuit has repeatedly observed that "[i]t is not enough that the plaintiff suffered the ordinary slings and arrows that workers routinely encounter in a hard, cold world." *E.g. Torrech–Hernandez,* 519 F.3d at 50.

■ Thus, in order to establish constructive discharge for the purposes of fulfilling the third prong of the prima facie case, Plaintiff must "show that conditions were so intolerable that they rendered a seemingly voluntary resignation a termination." *Id.* The First Circuit has further specified that "the question is not whether working conditions ... were difficult or unpleasant, but rather, an employee must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship [and] ... it effectively must be void of choice or free will." *Id.* (internal quotation and citation omitted).

■ Although Plaintiff has proffered other unsupported contentions regarding his treatment by Alvarez which the Court may not properly consider when deciding the instant motion for summary judgment,[17] the Court finds a paucity of facts supported by admissible evidence that relate to the adverse action allegedly suf-

---

**15.** The First Circuit Court of Appeals has denominated satisfaction of this burden as "relatively light." *Greenberg v. Union Camp Corp.,* 48 F.3d 22, 25 (1st Cir.1995). It has also been characterized as "not onerous" and only requires "minimally sufficient evidence." *Smith v. Stratus Comp., Inc.,* 40 F.3d 11, 15 n. 4 (1st Cir.1994); *Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 479 (1st Cir.1993).

**16.** Although Defendant's arguments for summary judgement primarily discuss Defen-

dant's lack of discriminatory animus, the same arguments pertain to this third prong as well as they clearly relate to the sufficiency of Plaintiff's constructive discharge theory as well.

**17.** Herein lies the peril of failure to follow the local rules of civil procedure, particularly the anti-ferreting rule, of which the First Circuit warned. *See Caban Hernandez,* 486 F.3d at 7.

fered by Plaintiff. Indeed, in Plaintiff's opposition to the motion for summary judgment, he only alleges in a conclusory manner, utterly unsupported by fact that he has set forth a constructive discharge theory based upon the facts which he presents to the Court. Accordingly, acting in a benevolent manner, the Court has searched for evidentiary needles in the record's haystack and assembled as best it can and of its own volition the following facts which best support Plaintiff's constructive discharge claims.

First, Plaintiff states that he was required to perform duties not included in his job description, including operation of various electronics, filing, use of personal computers and financial statement analysis. Additionally, Alvarez greatly restricted Plaintiff's use of the telephone and forbid Plaintiff from dealing directly with suppliers. In these complaints, the Court finds only an expression of managerial prerogatives, particularly as Plaintiff has not made a conclusive showing that these additional duties were not necessary for the performance of his proper tasks or that restriction of his use of the telephone impacted his ability to perform his duties in any way.

Further, Plaintiff is offended that Alvarez chose not to include him within the delegation that attended the second bidders' summit. However, the Court does not find anywhere on the record indication that Alvarez was required to send Plaintiff to this summit or that Plaintiff was indeed specially qualified for attendance so that her choice not to include him indicates anything other than a managerial decision. *See e.g. Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir.1991)("[C]ourts may not sit as super personnel departments assessing the merits.")

Plaintiff also received written reprimands[18] for failure to perform duties assigned to him. However, none of these reprimands levied any disciplinary action at Plaintiff other than directing him to complete tasks assigned to him.

Plaintiff also states that Alvarez moved and wrote on items on Plaintiff's desk, demanded further information regarding vacation time from Plaintiff, mandated that Plaintiff attend computer seminars and requested an audit of Plaintiff's payroll and leave. Finally, Plaintiff states generally that Alvarez spoke to him in a sarcastic manner and shouted at him and that she told him indistinctly that he "should know better" than to engage in certain activities because of his age or the length of time he had worked at PREPA. The Court finds that the actions of which Plaintiff complains represent mere annoyances and unpleasantries in the workplace. *See Torrech–Hernandez*, 519 F.3d at 50.

▮ Of these facts, none rise to the level of constructive discharge. None of

---

**18.** The Court finds four such letters in evidence. In the first, dated March 23, 2007, it was memorialized that Plaintiff indicated that he failed to expunge any of the files assigned to him. (Docket No. 53–4). Further, that letter stated merely that Plaintiff was granted additional time to correct this failure prior to implementation of any disciplinary action. The second letter, dated March 27, 2007, simply states that an audit showed that Plaintiff failed to perform his duties regarding the files. (Docket No. 53–5). The third letter, dated May 14, 2007, states that a subsequent audit indicated that Plaintiff did not perform his assigned tasks in relation to the files assigned to him and directed Plaintiff to perform these tasks. (Docket Nos. 53–6 & 68–16). The final letter, dated July 3, 2007, states that a further audit showed that the work was still not completed and returned the files to Plaintiff once more so that he could perform his duties. (Docket No. 53–7). In none of these letters is termination or any disciplinary action other than the return of files to Plaintiff for him to complete assigned tasks contemplated.

the foregoing facts indicates that Plaintiff's free will was annihilated and that he had no choice other than to retire from his position. Even the reprimands which he received did not indicate that his involuntary termination was imminent. *See Torrech–Hernandez,* 519 F.3d at 51–52 (subjective fear of eventual termination is insufficient for purposes of establishing constructive discharge). "An employee may not be unreasonably sensitive to his ... working environment." *Id.* (quoting *Calhoun v. Acme Cleveland Corp.,* 798 F.2d 559, 561 (1st Cir.1986))(internal quotation omitted). Accordingly, "apprehension of future termination is insufficient to establish constructive discharge—instead an employee is obliged not to assume the worst, and not to jump to conclusions too fast." *Id.* (internal quotation omitted). Plaintiff proffers no evidence indicating that he was left without a reasonable option other than to terminate his employment by retiring and no indication that Alvarez' actions towards him constituted "harassment so severe and oppressive that staying on the job while seeking redress [was] intolerable." *De La Vega v. San Juan Star, Inc.,* 377 F.3d 111, 118 (1st Cir.2004). Accordingly, the Court finds that Plaintiff has failed to meet his burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* burden shifting standard. Thus, the Court need not concern itself with finding whether or not Defendant has set forth a legitimate reason for its business decisions or whether Plaintiff has, in turn, refuted that reason with a showing of discriminatory animus as the Court concludes that Plaintiff has failed to reach the threshold of showing that he suffered a constructive discharge.[19] Accordingly, the Court here-

by **GRANTS** Defendant's motion for summary judgment as to the ADEA discrimination claim based upon a constructive discharge theory.

## V. ADEA HOSTILE WORK ENVIRONMENT CLAIM

As an initial matter, the Court notes that it can find no direct reference to a claim for hostile work environment raised in Plaintiff's complaint. However, acting out of an abundance of caution, the Court shall address the sufficiency of evidence proffered by Plaintiff regarding this claim as the first cause of action set forth by Plaintiff in his complaint which relates to discrimination under the ADEA is vague and does not specify the nature of his discrimination claim beyond the hint that is "arises under federal law."

 A plaintiff may bring a hostile work environment claim under the ADEA in the First Circuit, however, such a plaintiff is warned that he or she may not claim compensatory damages for pain and suffering. *Collazo v. Nicholson,* 535 F.3d 41, 44 (1st Cir.2008). In order to succeed in an ADEA hostile work environment claim, a plaintiff must show that: (1) he is a member of the class protected by the ADEA; (2) he was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment was sufficiently pervasive or sever so as to alter the conditions of the plaintiff's employment and create an abusive work environment; (5) the objectionable behavior was both subjectively and objectively offensive such that a reasonable person would find it hostile or abusive; (6) that the plaintiff found it hos-

---

19. The Court notes that Defendant utilized the same evidence which evidenced that the onerousness requirement of a constructive discharge was not met to show an absolute lack of discriminatory animus utilized. *See e.g.*

*Mesnick,* 950 F.2d at 825 ("[C]ourts may not sit as super personnel departments assessing the merits ... of employers' nondiscriminatory business decisions.")

tile or abusive; and (7) some basis for employer liability has been established. *Marquez v. Drugs Unlimited, Inc.*, Civ. 08–2387, 2010 WL 1133808 at *8 (D.P.R. March 22, 2010)(citing *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)); *see also Rodriguez–Torres v. Gov't Dev. Bank of Puerto Rico*, 704 F.Supp.2d 81, 100 (D.P.R.2010). The Court typically looks to the totality of the circumstances, analyzing "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance" in order to determine whether a hostile work environment exists. *O'Rourke*, 235 F.3d at 728–29 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

■ The same evidence discussed above relating to Plaintiff's constructive discharge theory is cited in support of his claim of a hostile work environment. Thus, Plaintiff rests his hostile work environment age discrimination claim upon allegations that Alvarez restricted his use of the telephone at work, touched items on his desk, assigned him additional tasks not included in his job description over the protests of Plaintiff's union, issued disciplinary letters to Plaintiff for failure to perform tasks, did not include Plaintiff in a delegation sent to a summit, requested an audit of Plaintiff's payroll and leave, generally spoke sarcastically to Plaintiff and shouted at him. Plaintiff fails utterly to proffer facts based upon evidence of record connecting the treatment of which he complains to his age. Rather, Plaintiff relies entirely upon his own inferences based upon otherwise bothersome, but age neutral, behavior; therefore the Court cannot find that this treatment supports his hostile work environment claim. *See Gonzalez v. El Dia, Inc.*, 304 F.3d 63, 69–70 (1st Cir.2002) (finding that where a

comment may be interpreted as ageist or may alternatively be interpreted as benign, the Court may not base a finding of age discrimination solely upon them); *see also Acevedo–Padilla v. Novartis Ex Lax*, No. 08–1185, 2010 WL 3785689 at *26 (D.P.R. Sept. 30, 2010) (finding that a plaintiff's ADEA hostile work environment claim failed where he failed to show that the behavior which constituted the basis for the claim was related to an age-based animus); *see also Rodriguez–Torres*, 704 F.Supp.2d at 102 (finding that comments directed towards the plaintiff that did not support an inference of discrimination were insufficient to form the basis of the plaintiff's hostile work environment claim). ("While his allegations portray a work atmosphere that was unpleasant for Plaintiff, they simply do not rise to the level of a hostile work environment.") *See Jones v. Johnson and Wales Univ.*, Civ. 08–476, 2010 WL 3703516 at *9 (D.R.I. Aug. 20, 2010)(citing *Rivera–Martinez v. Commonwealth of Puerto Rico*, No. 05–2605, 2007 WL 16069 at *3 (1st Cir. Jan. 4, 2007), *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir.2002) and *Rigau v. Pfizer Caribbean Corp.*, 525 F.Supp.2d 272, 283 (D.P.R.2007)).

■ In fact, the only evidence proffered by Plaintiff that relates to age is the comments made and then repeated an unspecified number of times by Alvarez to the effect that Plaintiff should know better than to engage in certain activities because of his age or because of his number of years in service at PREPA. "At most, the comments are mere offensive utterances" which "appear to be isolated incidents and not persistent comments." *See Rodriguez–Torres*, 704 F.Supp.2d at 102 (citing *O'Rourke*, 235 F.3d at 728–29). Such "teasing, offhand comments, and isolated incidents" which are not very serious do "not amount to discriminatory changes in

the terms and conditions of employment." *See Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *see also Rodriguez–Torres,* 704 F.Supp.2d at 102 (calling a plaintiff "viejito", the Spanish translation for old, is insufficient to create a hostile work environment); *see also Marrero v. Schindler Elev. Corp.,* 494 F.Supp.2d 102, 110 (D.P.R.2007) (calling a plaintiff "viejito" on a daily basis insufficient to support a hostile work environment claim). Thus, Plaintiff's hostile work environment claim must fail as a matter of law and the Court **GRANTS** Defendant's motion for summary judgment as to this claim.

## VI. RETALIATION

In his opposition to the motion for summary judgment, Plaintiff also asserts that Alvarez retaliated against him for complaining[20] of her allegedly discriminatory treatment of him. Specifically, Plaintiff alleges that after he complained of the alleged age discrimination, Alvarez (1) intensified her pattern of age-based harassment against Plaintiff; (2) issued warning letters to Plaintiff regarding his non-performance of duties assigned to him; (3) removed duties from Plaintiff and assigned them to other employees; (4) and improperly intervened in an arbitration proceeding regarding the reclassification of Plaintiff's position. Plaintiff also asserts that, after he complained of the alleged discrimination, Defendant unjustifiably denied his petition for promotion. Plaintiff does not further elucidate specific events that underlie any of these allegations or flesh them out with details or even the dates when they occurred, but relies solely upon this laundry list of complaints to support his retaliation claim.

In addition to guarding employees within the protected age group from discrimination, the ADEA also protects employees who invoke the statute's protections. *Ramirez Rodriguez v. Boehringer Ingelheim Pharma., Inc.,* 425 F.3d 67, 84 (1st Cir.2005) (citing 28 U.S.C. § 623(d)). Where, as here, no direct evidence of retaliation is available, the Court's analysis closely resembles the *McDonnell Douglas* burden-shifting scheme above.

> First, the plaintiff must make a *prima facie* showing that (i) he engaged in ADEA-protected conduct, (ii) he was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action. If the plaintiff makes a prima facie showing of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its employment decision. Finally, if the defendant presents such a reason, the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext masking retaliation for the employee's opposition to a practice cast into doubt by the ADEA.

*Ramirez Rodriguez,* 425 F.3d at 84 (quoting *Mesnick,* 950 F.2d at 827)(internal quotations omitted).

As an initial matter, the Court notes that it is uncontested that Plaintiff has met the first prong of the prima facie test—he indeed filed an EEO complaint, as well as an EEOC complaint, alleging that Alvarez discriminated against him based upon age. However, some of the adverse employment actions asserted by Plaintiff are not supported by the record.

**20.** Although Plaintiff asserts that he first complained of the allegedly discriminatory behavior to a manager during February or March of 2007, this assertion is unsupported by evidence on record. Thus, the Court has only assessed the retaliation claim as it relates to Plaintiff's EEO complaint and subsequent EEOC complaint.

First, the Court finds that Plaintiff's allegation that Alvarez generally intensified her discrimination against him after he filed the complaint is vague and unsupported by the record. Thus, the Court may not base its finding of an adverse employment action upon this assertion. Further, Plaintiff has not directed the Court's attention to any evidence of record showing that Alvarez improperly intervened in any arbitration proceeding relating to Plaintiff or to his position of employment. Thus, the Court may not base its finding of an adverse employment action upon this bald assertion, unsupported by verified fact. *See Vera*, 622 F.3d at 25–27 (stating that the Court need not credit bald assertions in ruling upon a motion for summary judgment). Likewise, there is no evidence of record showing that Plaintiff was unjustifiably denied a promotion; in fact, Plaintiffs have not set forth any properly supported facts pertaining to a promotion. Thus, this alleged action also fails to fulfill the adverse employment action prong of the test.

■ Consequently, the only two remaining actions which may constitute adverse employment actions for the basis of Plaintiff's retaliation claim are the warning letters issued to Plaintiff for failure to complete duties assigned to him relating to supplier files and the general allegation that Alvarez stripped Plaintiff of duties and re-assigned them to other employees. Regarding the alleged stripping of duties, Plaintiff fails entirely to place this action in temporal relation to the protected behavior. He merely states that it occurred sometime within a year to a year and a half prior to his retirement from PREPA. The EEO complaint which constitutes the first protected action [21] was filed in March of 2007, the EEOC complaint which constitutes the second protected action was filed on July 26, 2007. Plaintiff notified PREPA of his voluntary retirement in October of 2007, and that retirement was effective on January 12, 2008. Therefore, the Court has no indication that the stripping of duties actually occurred after the EEO complaint or the EEOC complaint were filed and, accordingly, the Court cannot find that this action constituted retaliation for the filing of the EEO complaint or the EEOC complaint.

■ Thus, the only remaining action upon which Plaintiff's retaliation claim rests is Plaintiff's assertion that the warning letters were issued in reprisal for filing the EEO complaint. The letters were issued after the EEO complaint was filed,[22] however, the meeting at which Plaintiff was notified of the duties which he, along with other coworkers, was responsible for completing, as well as the notification that failure to comply with the requirements of the duty would result in disciplinary action, both occurred before Plaintiff filed his EEO complaint in April. Thus, Plaintiff received the duty of which he complains, as well as notification that failure to comply with that duty would result in disciplinary action before the protected action occurred. Accordingly, the Court may not find that Plaintiff has presented the Court with a triable issue of material fact as to his retaliation claim as the duty for which he was reprimanded in the letters was designated to him prior to the time when he engaged in the protected action and as he was also notified that failure to comply would result in some disciplinary action

---

**21.** As already noted, no evidence is cited relating to Plaintiff's alleged complaint to the Head Division Manager, thus, the Court does not address this potential protected action herein.

**22.** The letters were issued before the EEOC complaint was filed, so they cannot constitute retaliation for that protected action. Thus, the Court only analyzes the significance of the letters as related to the EEO complaint.

prior to that time. *See Mesnick,* 950 F.2d at 828–29 ("[W]hile statutes such as the ADEA bar retaliation for exercising rights guaranteed by law, they do not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers.") (internal quotation omitted). Accordingly, the Court also **GRANTS** brevis disposition as to this claim.

## VII. SUPPLEMENTAL CLAIMS

Jurisdiction in the instant case was premised upon Plaintiff's federal claims and the Court exercised supplemental jurisdiction over his non-federal claims arising under the laws of Puerto Rico. *See* 28 U.S.C. § 1367(a). When, as in the instant case, the federal question claims which grant the Court subject matter jurisdiction are dismissed, the Court should reassess its exercise of jurisdiction over the supplemental claims. *E.g. Roche v. John Hancock Mut. Life Ins. Co.,* 81 F.3d 249, 256–57 (1st Cir.1996). Where, as here, the federal claims "are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Thus, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's claims arising under the laws of Puerto Rico.

## VIII. CONCLUSION

For the reasons stated above, the Court hereby **GRANTS** Defendant's partial motion for summary judgment (Docket No. 50) pertaining to Plaintiff's federal claims and **DISMISSES WITH PREJUDICE** Plaintiff's claims of discrimination and retaliation under the ADEA. Further, the Court declines to continue to exercise its supplemental jurisdiction over Plaintiff's state law claims; those claims are hereby **DISMISSED WITHOUT PREJUDICE.**

Accordingly, the Court also **VACATES** the Pretrial Conference and Jury Trial set in the instant case.

**IT IS SO ORDERED.**