# United States Court of Appeals
## For the First Circuit

No. 22-1858

CARMEN QUINTANA-DIEPPA,

Plaintiff, Appellant,

v.

DEPARTMENT OF THE ARMY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Gelpí, Thompson, and Aframe,
Circuit Judges.

Humberto Cobo-Estrella, Cobo Estrella Law Office, Winston Vidal-Gambaro, and Winston Vidal Law Office on brief for appellant.

W. Stephen Muldrow, United States Attorney, with whom Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Francisco A. Besosa-Martínez, Assistant United States Attorney, were on brief, for appellee.

February 25, 2025

**GELPÍ**, **Circuit Judge**.    Carmen Quintana-Dieppa ("Quintana") sued her employer, the Department of the Army ("the Army"), alleging sex and race discrimination as well as retaliation, under 42 U.S.C. § 2000 et. seq., and age discrimination under 29 U.S.C. § 621 et. seq.  Upon conclusion of discovery, the Army moved for summary judgment, arguing that it was entitled to judgment as a matter of law on each of Quintana's claims.  The district court agreed and granted the Army's motion. Quintana appealed.  For the reasons that follow, we **affirm** the district court's judgment.

## I. BACKGROUND

### A. Facts

#### 1. Quintana's Complaint to the Equal Employment Opportunity Commission ("EEOC")

Quintana, a 62-year-old Puerto Rican woman, began working for the Army in 1988, and had served as a Child Youth and School Services ("CYSS") Coordinator at Fort Buchanan in Puerto Rico since 2009.  After working for the Army for nearly three decades, Quintana filed a complaint with the EEOC in September 2014, alleging that the Army discriminated against her based on her national origin.[1]

---

[1]  About three years later, in July 2017, an administrative judge at the EEOC ruled against Quintana, concluding she was not discriminated against based on her national origin.

- 2 -

## 2. The Army's First Investigation

While her EEOC complaint was pending, the Army's 81st Regional Support Command in Fort Jackson, South Carolina, received allegations that mismanagement and poor working conditions pervaded the Family and Morale, Welfare and Recreation ("FMWR") Division at Fort Buchanan. Shortly thereafter, in May 2016, the 81st Regional Support Command launched an investigation into the FMWR supervisory chain, which included Quintana and other supervisors. The investigating officer found that Quintana's authoritative leadership style fostered a toxic work environment and that she did "not always treat subordinates with dignity and respect." Accordingly, the investigating officer recommended that Quintana be removed from her supervisory position at the CYSS, suspended for at least ten days, transferred to a nonsupervisory position within the FMWR Division, and transitioned into retirement. The Commanding General at Fort Jackson accepted the findings of the investigation, but rather than adopting the proposed remedial measures, he forwarded the results to Colonel Michael T. Harvey ("Col. Harvey"), Fort Buchanan's Garrison Commander, to determine any appropriate disciplinary or corrective actions. Col. Harvey subsequently requested a second investigation into Quintana's treatment of her subordinates.

### 3. The Army's Second Investigation and Quintana's Performance Evaluations

The second investigation began in August 2016 and ended in October 2016. It ultimately confirmed the first investigation's findings. For instance, twenty-seven individuals stated that they had witnessed or been subjected to Quintana's "disrespectful or disparaging" behavior. The investigation moreover revealed that Quintana routinely employed favoritism, intimidating language, and retaliatory tactics in dealing with her subordinates. As a result, the investigating officer concluded that her pattern of conduct warranted disciplinary action.

Three months after that investigation, Quintana received a performance evaluation for the period from July 1, 2015, through June 30, 2016. Her then-supervisor, Daniel Carter ("Carter"), gave her a "satisfactory" rating, notwithstanding her outstanding performance rating in the prior year, because she had not expanded the youth sports and school programs. Under oath, she asserted that it was obvious that her lower performance rating for the relevant period was tied both to the second investigation's results and to professional jealousy.[2]

---

[2] Quintana did not receive performance standards or an evaluation for the 2016-2017 period. Carter testified that during his time as the acting Program Director of FMWR, none of the fifteen employees he supervised received new performance standards for the 2016-2017 period and Quintana was among one of multiple employees who did not receive an evaluation.

**4. Quintana's Reassignment and Promotion Request**

Concerned with Quintana's management issues, Col. Harvey signed a letter of reassignment to be issued to her on January 25, 2017, demoting her to a nonsupervisory role. Two days earlier, however, a hiring freeze was put in place that lasted about two and a half months. So, Quintana could not be reassigned immediately after the second investigation ended.

Despite the reassignment plans, Quintana told her supervisor in May 2017 that she needed to be non-competitively promoted to a NF-05 Coordinator position. However, Quintana's supervisor informed her that Fort Buchannan's CYSS program did not fit the demographics required for that position.

In June 2017, the FMWR Division at Fort Buchanan experienced personnel changes: Tod Antony Scalf ("Scalf") became the new Programs Director after Carter vacated his position. Soon after taking the helm, Scalf reviewed the files related to Quintana's second investigation and determined that removing her from management was justified. So he signed a revised reassignment letter, transferring her to a newly created position with the same pay and grade. The reassignment letter identified serious concerns about her management style as the reason for the reassignment. On November 17, 2017, she received the reassignment notice and was placed on a one-day administrative leave.

About a month and a half later, Wendy Winston, a Hispanic woman, temporarily assumed Quintana's duties as CYSS Coordinator. That replacement, however, was short-lived. On the last day of January, Aida Aguilú -- another Hispanic woman who was approximately a year and two months younger than Quintana -- succeeded Winston as the Acting CYSS Coordinator.

## B. Procedural History

Quintana sued the Army, asserting claims of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq., discrimination based on sex and race under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000 et. seq., and retaliation under Title VII, id.[3] After discovery, the Army moved for summary judgment, contending that there were no genuine issues of material facts, and that it was entitled to judgment as a matter of law on all Quintana's claims. Along with its motion, the Army submitted a Statement of Undisputed Material Facts ("Statement of Facts"), setting forth its version of the facts, as required by the District of Puerto Rico's Local Rule 56 ("Local Rule 56"). In opposing the Army's motion, Quintana filed an Opposing Statement of Contested Facts ("Statement of Contested Facts"), which included also a separate

---

[3] Quintana's complaint included other claims, the disposition of which she does not challenge in this appeal.

section with additional facts she believed were undisputed and material ("Statement of Additional Facts").

After reviewing the parties' submissions, the district court found that neither Quintana's Statement of Contested Facts nor her Statement of Additional Facts created any factual dispute worthy of trial. The court reasoned that her Statement of Additional Facts was not presented in accordance with Local Rule 56, because Quintana attempted to add facts throughout her response to the Army's Statement of Facts and, to the extent she provided a separate section of additional facts, she failed to format them as separate numbered paragraphs as required by Local Rule 56. Further, the district court emphasized the record citations underlying her Statement of Contested Facts did not contradict the Army's assertions in its Statement of Facts, did not support Quintana's own propositions, or, in some cases simply were not included. In light of the substantial burden posed by Quintana's failure to comply with Local Rule 56, the court deemed the Army's proposed facts almost entirely undisputed.

Finding no genuine issue of material fact, and concluding that no reasonable jury could find in Quintana's favor, the district court ultimately granted the Army's motion for summary judgment. In so doing, the court held that Quintana did not make out her prima facie case on any of her claims, and that, even if she had carried that initial burden, she still failed to prove

that the Army's justifications for taking adverse action against her were a mere pretext to hide a discriminatory or retaliatory animus.

Quintana appealed.

## II. DISCUSSION

This court "review[s] a district court's grant or denial of summary judgment de novo, examining the record in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor." Dusel v. Factory Mut. Ins. Co., 52 F.4th 495, 502-03 (1st Cir. 2022) (citing Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015)). A party moves for summary judgment when it believes that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Pena v. Honeywell Int'l, Inc., 923 F.3d 18, 26-27 (1st. Cir. 2019) (citing Fed. R. Civ. P. 56(a)). "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law.'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). And a dispute is genuine when the evidence is such "that a reasonable jury could resolve the point in favor of the nonmoving party." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 79 (1st Cir. 2018) (quoting

Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)).

If the moving party shows that no genuine issue of material fact exists, "the burden shifts to the nonmoving party, who must . . . demonstrate that a trier of fact could reasonably resolve that issue in [his or her] favor." Dusel, 52 F.4th at 503 (quoting Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016)). In so doing, the nonmoving party "must present definite, competent evidence to rebut the motion" on any issue for which it bears the ultimate burden of proof. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (first citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986); and then citing Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).

"When all is said and done, the [district] court must 'view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor,' but paying no heed to 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (first quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990); and then quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990)) (alteration in original). If the court finds that no genuine issue of material fact exists and that no

reasonable jury would favor the nonmoving party, then it must grant the moving party's motion.  Fed. R. Civ. P. 56(a).

With this standard in mind, we first consider whether Quintana adequately contested the Army's Statement of Facts, then turn to address the merits of her claims.

## A. Local Rule 56

According to Quintana, the district court fundamentally erred in constructing the summary judgment record when it found that she failed to properly contest the Army's Statement of Facts. When the court made that determination, Quintana argues, it undertook the role of factfinder.  And so, Quintana asserts, the district court's decision warrants reversal.

Local Rule 56 mandates that a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried."  D.P.R. Loc. R. 56(b).  That rule also demands that the party opposing the movant's motion must submit "with its opposition a separate, short, and concise statement of material facts"  which "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." D.P.R. Loc. R. 56(c).  "Unless a fact is admitted, the opposing statement shall support each denial or qualification by a record

citation . . . ." Id. If any fact is not supported by "a citation to the specific page or paragraph of identified record material supporting the assertion," the court may "disregard" the unsupported statement. D.P.R. Loc. R. 56(e). Where a supported fact is not properly controverted, it "shall be deemed admitted." Id.

Complying with Local Rule 56 is essential. For it is "designed to function as a means of 'focusing a district court's attention on what is -- and what is not -- genuinely controverted.'" Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007) (quoting Calvi v. Knox Cnty., 470 F.3d 422, 427 (1st Cir. 2006)); see also López-Hernández v. Terumo P.R. LLC, 64 F.4th 22, 26 (1st Cir. 2023) ("Local Rule 56 is in service to Federal Rule of Civil Procedure 56." (quoting Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011))). If a party does not comply with the rule, the "district court is free, in the exercise of its sound discretion, to accept the moving party's facts as stated." Cabán Hernandez, 486 F.3d at 7 (first citing Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004); and then citing Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)).

The Army complied with Local Rule 56 when it submitted its Statement of Facts, along with its motion for summary judgment. But Quintana failed to so abide in her opposition. In submitting

her Statement of Contested Facts, Quintana sought to dispute twenty-four assertions that the Army made in its Statement of Facts.[4]  Quintana tried to do so by denying or qualifying the Army's assertions.[5]  In trying to contest the Army's factual statements, however, she failed to properly oppose or qualify the Army's factual assertions for two reasons: (1) nonexistent or improper record citations; and (2) denials based on irrelevant facts, such as her lack of personal knowledge.  On these bases, the district court acted within its discretion by concluding that Quintana failed to properly contest the Army's proposed material facts.

We turn first to statements 8, 28, 29, 31, 38, and 57 in the Army's Statement of Facts.  In opposing those factual assertions, Quintana alleged she lacked adequate knowledge to contest those facts.  Appealing to ignorance, however, does not create a genuine issue of material fact, since lack of knowledge does not contradict the proposition that the fact is true.  Put

---

[4]  Quintana denied or qualified the following statements from the Army's Statement of Material Facts: 8, 14, 28, 29, 31, 33, 37, 38, 39, 46, 47, 51, 54, 57, 60, 61, 62, 63, 67, 75, 76, 85, 89, and 90.  She admitted the remaining allegations.

[5]  A "qualification must clarify a statement of fact that, without clarification, could lead the Court to an incorrect inference."  Pérez v. Oriental Bank & Tr., 291 F. Supp. 3d 215, 219 (D.P.R. 2018).  To avoid crossing the line between a statement of additional fact and a proper qualification or denial, Quintana's qualifications and denials must be strictly limited to the issues raised in the Army's assertion.  See id.

another way, Quintana's asserted lack of personal knowledge as to the existence of certain facts does not amount to "definite, competent evidence" controverting their truth. See Mesnick, 950 F.2d at 822; see also Chapman v. Finnegan, 950 F. Supp. 2d 285, 292 n.3 (D. Mass. 2013) ("A party opposing summary judgment cannot create a genuine issue of fact by denying statements, which the moving party contends are undisputed and supported by sufficient evidence, on the basis that he lacks knowledge and information to admit or deny the statement."). So, Quintana's oppositions to statements 8, 28, 29, 31, 38, and 57 raised no factual dispute worthy of trial.[6]

Next, we turn to Quintana's argument that she did provide citations in support of her responses to the Army's Statement of Facts. Providing citations alone is insufficient. See D.P.R. Loc. R. 56(c), (e). Instead, Quintana needed to cite to portions of the record that support her propositions contradicting the Army's Statement of Facts. See id. But that, she failed to do.

---

[6] Relatedly, Quintana asserts that her response to statement 8 raised a genuine dispute of material fact regarding whether she was the subject of the second investigation. But Quintana does not dispute that the subject of the investigation was the FMWR Supervisory chain, which Quintana admits includes herself and two other individuals. Whether Quintana was the sole subject of the second investigation, or one of three subjects, is not of consequence for summary judgment purposes. Nor do Quintana's citations to the Carter deposition testimony, regarding his limited knowledge of the investigation, actually refute this point.

For instance, many of Quintana's record citations ignored Local Rule 56(e)'s instruction to identify the "specific page or paragraph of identified record material supporting the assertion." See López-Hernández, 64 F.4th at 27 (quoting D.P.R. Civ. R. 56(e)) (concluding that party had not complied with Local Rule 56 where it "often cite[d] generally to multiple exhibits which are themselves voluminous"). In support of her denials of statements 75 and 76, Quintana's citation consisted of the word "Depos." She also cited to the same swathe of record material as supporting, at least in part, her denials or qualifications to statements 8, 28, 29, 31, 33, 37, 38, 39, 47, 51, 56, 57, 60, 61, 62, 63, 67: namely, sixteen paragraphs of her "Sworn Statement," one paragraph of her interrogatory answer, two paragraphs from the "AR-15 Investigation," and eight pages from an "EEO Statement."

Her citation to those materials remained the same no matter what facts she was purportedly denying or qualifying. Even assuming that support for Quintana's denials or qualifications exists somewhere in these materials, the district court would have been forced to search through the record to confirm its existence, given Quintana's lackadaisical citation style. See id. at 26 ("Said anti-ferret rule is intended to protect the district court from perusing through the summary judgment record in search of disputed material facts and prevent litigants from shifting that burden onto the court." (citations omitted)). Worse yet, Quintana

- 14 -

did not provide any record citations contradicting statements 14, 46, 75, 76, 85, 89, and 90, directly contravening Local Rule 56's instruction that "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation . . . ." D.P.R. Loc. R. 56(c).[7]

Even where Quintana did cite a specific portion of the record, such as Carter's or Scalf's deposition testimony, the record citations she provided frequently did not contradict the Army's statement. As a result, Quintana did not successfully dispute statements 33, 37, 39, 47, 51, 54, 61, 62, 63, and 67. For example, in response to statement 33, Quintana cited three portions of deposition transcripts regarding whether the second investigation report recommended her reassignment. None of these citations suggest that statement 33, which asserted that reasons for Quintana's reassignment were identified in the letter

_____

[7] In response to statement 85, Quintana did cite two Internet sources describing the impact of Hurricane Maria on Fort Buchanan. Whether these Internet sources (a press release regarding Fort Buchanan's recovery from Hurricane Maria and a photograph of Fort Buchanan after Hurricane Maria) were properly part of the summary judgment record is questionable, especially where Quintana did not attach them in her submission to the district court. Even if we assumed that the articles were part of the record, the language quoted by Quintana from these sources does not directly respond to the Army's statement 85, which asserted that the local EEO office was operational starting on October 12, 2017, following hurricanes in the summer of 2017. Quintana's sources do not mention the EEO office, nor foreclose the possibility that the EEO office was open as of October 12, 2017. Further, the sources do not support other assertions made by Quintana in her denial, such as Quintana's "Health Reasons."

reassigning her, was incorrect. Nor do they support the additional facts that Quintana attempted to squeeze into her response, such as her claim that she was told that the reassignment was not punitive, that there was no derogatory information in her file, and that Scalf might "consider" her for her original position if it opened back up.

Without appropriate record citations, Quintana's oppositions rest on mere allegations. And, since "mere allegations are not entitled to weight in the summary judgment calculus," Borges v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010) (citing Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004)), a "party cannot successfully oppose a motion for summary judgment by resting [upon them] . . . ." Pina v. Child.'s Place, 740 F.3d 785, 795 (1st Cir. 2014) (quoting LeBlanc v. Great Am. Ins., 6 F.3d 836, 841 (1st Cir. 1993)).

Still, Quintana insists that the district court failed to adequately explain its findings that there were no genuine factual disputes. For instance, Quintana faults the district court for describing in detail why one qualification to the Army's Statement of Facts failed to present a genuine factual dispute, without articulating why the other twenty-three qualifications and denials were similarly deficient. The district court, however, is not required "to ferret through the record to discern whether any material fact is genuinely in dispute." Rodríguez-Severino v. UTC

Aero. Sys., 52 F.4th 448, 458 (1st Cir. 2022) (quoting CMI Capital Mkt. Inv., LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008)). This is why time and again we have "emphasized the importance of complying with [that rule]." López-Hernández, 64 F.4th at 26 (citing Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001)). In light of the purposes of the anti-ferret rule, we do not impose a requirement that district courts individually explain why each of a party's responses were deficient.[8]

Thus, the district court did not abuse its discretion in treating the Army's Statement of Facts as uncontroverted. And the district court did not act as a factfinder when it accepted the Army's facts as uncontroverted based on Quintana's failure to dispute them in accordance with the local and federal rules. Indeed, the "[f]ailure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted." López-Hernández, 64 F.4th at 27 (citation omitted). This court has admonished that litigants who

---

[8] Regardless, the district court's opinion shows that it took painstaking care to assess each of Quintana's denials and qualifications. For instance, the district court determined that Quintana did partially dispute statement 60, by citing to evidence that she had requested a promotion and not received it. The district court went on to consider whether the denial of the promotion constituted discrimination and concluded that it did not. On appeal, Quintana has not argued that the district court erred in its analysis of the denial of the promotion as a discriminatory act.

ignore this rule do so "at their peril," <u>P.R. Am. Ins.</u> v. <u>Rivera-Vázquez</u>, 603 F.3d 125, 131 (1st Cir. 2010), for the rule establishes that a district court "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." D.P.R. Loc. R. 56(e).

Setting aside her opposition to the Army's Statement of Facts, Quintana asserts that the district court should not have disregarded her separate Statement of Additional Facts because each statement had a citation.[9] Quintana wrote a list of additional facts in a separate section, with citations to Scalf's and Carter's deposition transcripts, but did not number her paragraphs. The district court explained that it "should ignore these additional facts" because they were unnumbered and placed an "undue burden . . . upon the Army and the Court." If Quintana had submitted an unnumbered but otherwise unobjectionable Statement of Additional Facts, we might hesitate to affirm any decision to

---

[9] Quintana also asserts that the government's motion to strike her Statement of Additional Facts, was untimely. The timeliness of the government's motion to strike is irrelevant. The district court had authority enforce Local Rule 56 regardless of whether a motion to strike was filed. <u>Melino</u> v. <u>Bos. Med. Ctr.</u>, __ F.4th __, No. 24-1527, 2025 WL 325873, at *3 (1st Cir. Jan. 29, 2025) ("District courts . . . are entitled to demand adherence to specific mandates contained in [their local] rules.").

entirely disregard that Statement.[10]  That is not what happened here, however.

To begin, we have serious doubts about Quintana's characterization of the record in her citations.  For instance, Quintana claimed that Scalf testified that her reassignment had "nothing to do with" the second investigation.  But as best we can tell from the limited excerpt of the deposition transcript that Quintana provided to the district court on summary judgment, Scalf was clarifying his earlier testimony that a separate Army regulation "ha[d] nothing to do with" the investigation.  Indeed, Scalf went on to testify that "removing [Quintana] from management of CYS" was "justified" by the fact-finding in the second investigation report.  Moreover, the district court noted that the additional statements were "by-and-large irrelevant and would not tilt the needle in a different direction" and, in its discussion of the merits, took the time to discuss why the additional facts were not material to the outcome of the case.  See McCarthy, 56

_____

[10] Local Rule 56(c) requires that additional facts be set forth in a separate section, "in separate numbered paragraphs." D.P.R. Loc. R. 56(c).  And Local Rule 56(e) permits the court to disregard statements of fact when they are not properly supported by record citations.  D.P.R. Loc. R. 56(e).  But no portion of Local Rule 56 expressly indicates that the district court may do the same when the only deficiency with the party's submission is failure to number its paragraphs.  See id. ("The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment.").

F.3d at 315 (explaining that a contested fact must be material to preclude summary judgment).

Despite the district court's careful attention, Quintana insists that there are several contested facts that should have precluded summary judgment. Because materiality depends on the substantive law, Anderson, 477 U.S. at 248, in our assessment of the merits below, we consider the genuineness and materiality of any purported factual disputes that were both memorialized in the Statement of Additional Facts and raised on appeal.[11] As that discussion will show, there is no genuine issue of fact in

---

[11] For the first time on appeal, Quintana seeks to use certain performance evaluations she submitted, as well as a former supervisor, Dallas Petersen's ("Petersen"), sworn statement, to create genuine disputes of material fact. None of that purported evidence was before the district court at the motion for summary judgment stage. The 2010-2014 performance evaluations made their debut on appeal, and Petersen's sworn statement was submitted two months after Quintana opposed summary judgment. So we do not consider either. We have warned litigants that "[f]ollowing discovery, a party may not use a later affidavit to contradict facts previously provided to survive summary judgment." Escribano-Reyes v. Prof'l HEPA Certificate Corp., 817 F.3d 380, 385 (1st Cir. 2016) (citation omitted) (alteration in original). Moreover, the district judge had no obligation to look outside the record provided to it on the summary judgment motion. See Hoffman v. Applicators Sales And Serv., Inc., 439 F.3d 9, 16 (1st Cir. 2006) (affirming district court's decision to disregard "tabulation of 'documentary evidence provided in discovery by Defendants'" where proponent did not present the underlying documentary evidence to the court); Colón Ortiz v. Rosario, 132 F. App'x 847, 848 (1st Cir. 2005) (explaining that district court was permitted to ignore materials that were not filed until a subsequent motion to reconsider the summary judgment ruling).

Quintana's Statement of Additional Facts that would have changed the outcome of this case on summary judgment.

Of course, the Federal Rules of Civil Procedure allow district courts to consider any other material in the record. See FRCP 56(c)(3) ("The court need to consider only the cited materials, but it may consider other materials in the record.") (emphasis added). But whether the court embarks on that burdensome task is discretionary -- not mandatory. See id.; cf. López-Hernández, 64 F.4th at 26 (explaining the rationale for Local Rule 56(e) and how "[v]iolations of th[at] local rule are astoundingly common and constitute an unnecessary burden to the trial court's docket and time"). Here, the district court exercised that discretion in deciding not to do so. We therefore discern no abuse of discretion in the district court's construction of the summary judgment record.

### B. Quintana's Claims

We now examine Quintana's claims relying on the undisputed facts as set forth by the Army. Quintana asserts that three of her claims should have survived summary judgment on appeal: (1) sex and race discrimination under Title VII, (2) age discrimination under ADEA, and (3) retaliation under Title VII.[12]

---

[12] Quintana waived both her FLSA retaliation and her Title VII hostile work environment claims, to the extent they were also disposed of by the district court's summary judgment decision, for

In support of these claims, she makes a slew of disjointed arguments in an attempt to show that the involuntary reassignment was discriminatory or retaliatory.[13]  Where, as here, there is no direct evidence of discrimination and retaliation, we employ the three-stage burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).  See Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 446-47 (2009) ("[P]laintiffs who do not have 'smoking gun' evidence may nonetheless prove their cases by using the three-stage burden-shifting framework . . . .").

---

lack of development.  On appeal, she makes no argument regarding her FLSA retaliation claim.  And although she refers to her hostile-work-environment claim three times in her brief, she only makes bare bones conclusory assertions.  But judges are not mind-readers.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  United States v. Arroyo-Blas, 783 F.3d 361, 367 (1st Cir. 2015) (quoting Zannino, 895 F.2d at 17)).  Instead, litigants must "'spell out [their] arguments squarely and distinctly,' or else forever hold [their] peace."  Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (citation omitted).  Claims or "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."  Zannino, 895 F.2d at 17.

[13] The district court addressed seven purportedly adverse employment actions or retaliatory acts, but Quintana's appeal focuses only on her "involuntary reassignment" to a non-supervisory role.  Quintana's brief occasionally implies that she may view her denial of a promotion or the Army's two investigations as retaliatory acts in themselves, but she never develops an argument as to how the district court erred in its analysis of these acts.  Accordingly, we limit our discussion to whether Quintana's reassignment was discriminatory or retaliatory. See Zannino, 895 F.2d at 17.

At the first step, Quintana "has the initial burden of establishing a prima facie case of discrimination" and retaliation.  See Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 138 (1st Cir. 2012); Serrano-Colon v. United States Dep't of Homeland Sec., 121 F.4th 259, 270 (1st Cir. 2024).  Once the plaintiff meets that initial burden, "a presumption that the employer unlawfully discriminated against the employee" is created.  Vélez, 585 F.3d at 448 n.3 (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)).

If she establishes a prima facie case, then the burden shifts to the Army to articulate a legitimate, nondiscriminatory reason for its adverse action against Quintana.  See Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004).  If the Army does so, the inference of discrimination "vanishes."  See id.

And finally, if the Army makes that showing, then we move to the third and last stage of the McDonnell Douglas test. In that final step, "it is up to plaintiff, unassisted by the original presumption, to show that the employer's stated reason 'was but a pretext for . . . discrimination.'"  Medina-Munoz, 896 F.2d at 9 (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1336 (1st Cir. 1988)).  If Quintana successfully raises a genuine issue of fact as to the ultimate issue of whether the Army's employment decisions were motivated by discrimination, then her claims survive summary judgment.

The district court applied the McDonnell Douglas framework to each of Quintana's claims for sex and race discrimination under Title VII, age discrimination under ADEA, and retaliation under Title VII. See e.g., López-López v. Robinson Sch., 958 F.3d 96 (1st. Cir. 2020) (applying the McDonnell Douglas framework to ADEA claims); see also King v. Town of Hanover, 116 F.3d 965, 968 (1st. Cir. 1997) (applying the McDonnell Douglas framework to Title VII claims). The court concluded that Quintana had not established a prima facie case of discrimination under Title VII or the ADEA with respect to her alleged involuntary transfer or other adverse actions, and, even if she had, her claims would still fail at the later stages of the McDonnell Douglas burden-shifting framework. The court reached the same conclusion with respect to Quintana's claims that the Army retaliated against her by reassigning her to a new position.

For the purposes of appeal, we assume, without deciding, that Quintana established a prima facie case for all her claims and skip directly to the second and third stages of the McDonnell Douglas analysis. We focus on whether Quintana met her burden of showing that the Army's stated reason for the reassignment is pretext for discrimination or retaliation such that a trial is warranted.[14] See Lewis v. City of Bos., 321 F.3d 207, 217 (1st

---

[14] In other words, we assume that Quintana adduced sufficient

Cir. 2003) (assuming without deciding that plaintiff established a prima facie case of race discrimination).

### 1.   Claims for Discrimination Under Title VII and ADEA

As we have explained, "[a]t the second stage of the McDonnell Douglas approach, the burden of production shifts to the employer to spell out a legitimate, nondiscriminatory reason for the adverse employment action." Dusel, 52 F.4th at 506.  The Army stresses that it reassigned Quintana because it had "serious and substantiated concerns" about her "management style and treatment of employees under her supervision."  These concerns were supported by the findings from the Army's two investigations, which were based on statements by many of her subordinates.  These reasons are sufficient to meet the Army's burden at step two.

At the third stage of the McDonnell Douglas analysis, Quintana is required to "'elucidate specific facts which would enable a jury to find that the reason given' by the defendant for the adverse employment action 'is not only a sham, but a sham intended to cover up the employer's real motive.'"  Robinson v. Town of Marshfield, 950 F.3d 21, 25 (1st Cir. 2020) (quoting Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 25 (1st

---

evidence of each element of a prima facie claim, including that her reassignment was an adverse employment action, that her performance met the Army's legitimate job expectations, and that there was a causal link between her reassignment and her protected activity.  As a result, we need not analyze the various arguments Quintana raises in support of these points.

Cir. 2015)). Quintana can meet that burden by submitting "competent evidence that the presumptively valid reasons for [her reassignment] were in fact a cover-up for a . . . discriminatory decision." McDonnell Douglas Corp., 411 U.S. at 805. "But, evidence that would provide a supportable basis for reaching a different conclusion than the employer did with respect to its stated basis for the employment action does not suffice for a plaintiff to defeat summary judgment on the ground that the employer's stated basis was pretextual." Dusel, 52 F. 4th at 507 (citations omitted). Rather, Quintana "must present evidence from which a reasonable jury could supportably conclude 'that the employer's explanation is not just wrong, but that it is so implausible that the employer more likely than not does not believe it.'" Id. at 508 (quoting Forsythe v. Wayfair, Inc., 27 F.4th 67, 80 (1st Cir. 2022)).

Quintana argues that she can prove, through circumstantial evidence, that the Army's "legitimate, nondiscriminatory reason for her involuntary reassignment was pretextual." In her attempt to do so, she attacks the validity of the Army's investigation reports, asserting that "they are based on inadmissible hearsay statements" and "fabricated." Neither of these attacks has persuasive force. Our precedent permits an employer to point to the findings of an internal investigation into its employee's conduct to prove the basis for any adverse

- 26 -

acts it takes against the employee. See Ramírez Rodríguez v. Boehringer Ingelheim Pharms., Inc., 425 F.3d 67, 77 (1st Cir. 2005). This is so because the investigation reports are "not offered to prove that [Quintana] engaged in misconduct, but rather to demonstrate that [her] superiors had reason, based on a thorough investigation, to believe that [s]he had." Id.; see Ronda-Perez v. Banco Bilbao Vizcaya Argentaria, 404 F.3d 42, 45 (1st Cir. 2005) (explaining that the relevant inquiry was not whether complaints made by fellow employees were true, but whether plaintiff's superiors believed that the complaints were credible when they decided to terminate him); Fed. R. Evid. 801(c)(2) (defining hearsay to be out of court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement"). Nor is there any evidentiary foundation for the allegation that the investigation reports were fabricated. It is a mere conclusory proposition, as nothing in the record suggests that the Army fabricated the investigation report, nor did Quintana submit any evidence proving such.[15] And we have held that "conclusory allegations, improbable inferences, and unsupported speculation" cannot prove pretext. Theidon v. Harvard Univ., 948 F.3d 477, 502

---

[15] Quintana cites the sworn statement of Petersen, averring that the investigation against her was a sham. As we explained supra note 11, Petersen's statement is not part of the summary judgment record.

(1st Cir. 2020) (quoting Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Quintana further asserts the second investigation report never recommended reassignment, and that the Army rejected all other lenient options in taking disciplinary action against her. We are not persuaded. Neither rejecting lenient options nor the second investigation's failure to recommend reassignment proves that the Army's reasons are a sham intended to cover up a discriminatory motive. Notably, neither of these facts shows that the Army failed to follow its own policies or procedures, or treated Quintana differently than it would a similarly situated employee outside of the protected class. See Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 243 (1st Cir. 2006) (explaining that "[t]he severity of the discipline that [employer] meted out as a consequence -- termination of employment -- does not itself raise any inference of pretext or of discrimination or retaliation"). Indeed, the reassignment was entirely consistent with the first investigation report which recommended that Quintana be removed from her supervisory role, among other disciplinary measures. The Army justified the reassignment based on the reports' findings that Quintana treated her supervisees with a lack of dignity and respect. And she, in turn, did not submit direct or circumstantial evidence proving otherwise.

Simply stressing that the Army undertook a more punitive action than the one recommended in the second report -- without submitting any evidence that the Army did not believe the information contained in the report -- is the type of argument that merely suggests that the Army could have reached a different conclusion. And that type of submission cannot show pretext. See Dusel, 52 F.4th at 507 ("[E]vidence that would provide a supportable basis for reaching a different conclusion than the employer did with respect to its stated basis for the employment action does not suffice for a plaintiff to defeat summary judgment on the ground that the employer's stated basis was pretextual.") (citations omitted).[16] So not only did Quintana fail to impugn the veracity of the Army's reasons, but she also failed to elucidate specific facts that those reasons were a sham to hide a discriminatory motive.

Quintana nevertheless insists that she suffered discrimination because the Army first offered her CYSS Coordinator position to Chico Medina, a 36-year-old man. But even if we give

_____

[16] Our analysis would not change if we accounted for the deposition testimony Quintana cites in her opening brief. For instance, the fact that Carter was not aware of any of Quintana's misconduct or her performance standards when he started his role, does not in any way undermine the veracity of the Army's belief that Quintana's leadership and management ability was lacking. And Quintana's citation to the absence of a 2017 performance evaluation, written admonishment, or personal improvement plan merely adds color to her argument that the Army forwent more lenient discipline.

- 29 -

Quintana the benefit of the doubt and credit the offer to Medina as equivalent to hiring younger male substitute,[17] we note that evidence of her replacement's gender and age, if properly included in the summary judgment record, would typically support a prima facie case of discrimination.  It does little to meet Quintana's ultimate burden to show that the Army's non-discriminatory reason for her reassignment, her poor treatment of her subordinates, was insincere or pretextual.  See Rathbun, 361 F.3d at 74-76 (explaining that evidence of pretext was scant where plaintiff claimed she was more qualified than male employees who received promotions more quickly than she did).

Finally, that female, Hispanic employees above 40 years old were not involved in the decision-making process of Quintana's reassignment is irrelevant to our analysis.  See Rivas Rosado v. Radio Shack, Inc., 312 F.3d 532, 534 (1st Cir. 2002) (concluding that "[t]he mere fact that the decision makers were male does not alone, absent other evidence, create an inference that they engaged in gender discrimination" and thus could not show that the reasons for her firing were pretextual).  The relevant inquiry here at the third stage of the McDonnell Douglas analysis is whether the Army's

---

[17] Quintana raised, in her Statement of Additional Facts, the fact that Medina was offered Quintana's former job.  We note that in this case, the Army did not replace Quintana with a younger man, just that he was interviewed for the role and offered the position.  The Army replaced Quintana with Aguilú, a Hispanic woman, who is only about 14 months younger than Quintana.

proffered reason for reassigning Quintana was truthful or a pretext to engage in prohibited discrimination.  See Rathbun, 361 F.3d at 72.  Indeed, not even "thin evidence of pretext by itself can defeat summary judgment."  Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 34-35 (1st Cir. 2020) (quotation marks omitted) (citing Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 8, 10 (1st Cir. 2000)).  And here, Quintana's attempt to show pretext amounts not even to thin evidence, but rather to no evidence at all.  Accordingly, Quintana's Title VII claim based on sex, race, and age discrimination fails on the merits.

## 2. Retaliation Claim Under Title VII

We turn now to Quintana's Title VII retaliation claim. Quintana's position is that her Army supervisors retaliated against her by reassigning her after learning that she had filed an EEOC complaint.  The Army's position remains that it reassigned Quintana based on the findings of the two investigations, which showed that Quintana was a poor manager.  We have already analyzed why many of Quintana's attacks on the veracity of this stated reason fail to demonstrate pretext in the context of her discrimination claim.  Our analysis remains the same to the extent Quintana reasserts them in support of her retaliation claim.

Quintana raises a new line of argument in support of her retaliation claim that we have yet to address.  She attempts to

link her protected conduct and the purportedly retaliatory act by pointing to temporal proximity -- i.e., according to Quintana, her November 2017 involuntarily reassignment came shortly after her supervisors learned about the EEOC action at a meeting in July or August of 2017 with one of the individuals Quintana named in her EEOC complaint. See Rivera-Velázquez v. Regan, 102 F.4th 1, 13-14 (1st Cir. 2024) ("One way of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." (quoting Wyatt v. City of Boston, 35 F.3d 13, 16 (1st Cir. 1994))).

Accepting Quintana's version of events at face value,[18] we doubt that the three- or four-month period between the two events would suffice to establish the causal link required for even a prima facie showing of retaliation. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) ("[T]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly

---

[18] This is another example of Quintana's questionable characterizations of the record. Quintana claims that a jury could conclude that her supervisors Carter and Scalf learned of her EEOC complaint at a July or August 2017 meeting. This ignores the fact that Scalf testified that he learned of the pending EEOC action from Quintana herself, after he issued her reassignment. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 85 (1st Cir. 2006) (explaining that an employer can not retaliate where it did not learn of protected conduct until after it undertook purportedly retaliatory act).

hold that the temporal proximity must be 'very close.'" (citations omitted)); <u>Calero-Cerezo</u> v. <u>United States</u>, 355 F.3d 6, 25 (1st Cir. 2004) ("Three- and four-month periods have been held insufficient to establish a causal connection based on temporal proximity." (citations omitted)). However, we need not rest our opinion on this basis. Simply put, although very close "temporal proximity may suffice for a prima facie case of retaliation," it "does not satisfy [Quintana's] ultimate burden to establish that the true explanation" for her reassignment "was retaliation for engaging in protected conduct rather than poor performance." <u>Carreras</u> v. <u>Sajo, Garcia & Partners</u>, 596 F.3d 25, 38 (1st Cir. 2010) (affirming summary judgment and explaining that temporal proximity of four days did not suffice to show pretext)(citation omitted); see <u>Echevarria</u> v. <u>AstraZeneca Pharm. LP</u>, 856 F.3d 119, 138 (1st Cir. 2017) (affirming summary judgment and concluding that temporal proximity of a single day did not satisfy burden to show pretext). Here, apart from at best modest temporal proximity, Quintana has provided no other evidence that the Army's reasons for reassigning her were pretextual. Thus, she failed to meet her ultimate burden to show retaliatory motive under the <u>McDonnell Douglas</u> test.

## III. CONCLUSION

For the foregoing reasons, we **affirm** the district court's judgment.